**David G. Hosenpud**, OSB No. 83241
hosenpudd@lanepowell.com
**Leah C. Lively, OSB No. 96241**
livelyl@lanepowell.com
**LANE POWELL SPEARS LUBERSKY LLP**
Suite 2100
601 SW Second Avenue
Portland, Oregon  97204-3158
Telephone:  (503) 778-2100
Facsimile:  (503) 778-2200

Attorneys for Defendants Three Cities Research, Inc.;
Three Cities Fund III, L.P.; TCR Friends III, L.L.C.;
TCR Co-Investors III, L.L.C.; TCR GP, L.L.C.; TCR Management, Inc.;
Willem F.P. De Vogel; W. Robert Wright; Thomas G. Weld;
J. William Uhrig;Daniel Hornbarger; Darryl Dillenback; and James Wojtila

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **FRED W. FIELDS**,<br><br>                              Plaintiff,<br><br>     v.<br><br>**THREE CITIES RESEARCH, INC., et al.,**<br><br><br><br>                              Defendants. | CV No. 02-975 BR<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br>By Defendants Three Cities Research, Inc.; Three Cities Fund III, L.P.; TCR Friends III, L.L.C.; TCR Co-Investors III, L.L.C.; TCR GP, L.L.C.; TCR Management, Inc.; Willem F. P. De Vogel; W. Robert Wright; Thomas G. Weld; J. William Uhrig; Daniel Hornbarger; Darryl Dillenback; and James Wojtila |

MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     BACKGROUND FACTS .............................................................................................2

III.    PERSONAL JURISDICTION OVER THE DEFENDANTS IS LACKING ...................4

    A.      Applicable Legal Standard...............................................................................4

    B.      The Court Does Not Have General Personal Jurisdiction Over Any of the
        Defendants ........................................................................................................5

    C.      The Court Does Not Have Specific Personal Jurisdiction Over Any of the
        Defendants ......................................................................................................10

    D.      The Exercise of Personal Jurisdiction Over the Defendants Would Be
        Unreasonable and Would Offend Traditional Notions of Fair Play and
        Substantial Justice...........................................................................................13

IV.     THE COURT SHOULD DISMISS FIELDS' COMPLAINT FOR FAILURE TO
     JOIN INDISPENSABLE PARTIES.............................................................................14

    A.      CMC And Coe Are Necessary Parties ............................................................15

    B.      CMC And Coe Are Indispensable Parties ......................................................17

V.      THE COURT SHOULD DISMISS FIELDS' COMPLAINT FOR FAILURE TO
     STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED..................................21

    A.      Counts I and II Fail to State a Cognizable Claim for Breach of Contract ...........21

    B.      Count III Fails to State a Cognizable Claim for Tortious Interference with
        Contract...........................................................................................................29

    C.      Count IV Fails to State a Cognizable Claim for Tortious Breach of the
        Covenant of Good Faith and Fair Dealing.......................................................33

    D.      Count V Fails to State a Claim for Breach of Fiduciary Duty..............................34

VI.     CONCLUSION..........................................................................................................35

LANE POWELL SPEARS LUBERSKY LLP
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-5183
(503) 778-2100

# TABLE OF AUTHORITIES

## CASES

*Amfac Foods, Inc. v. International Sys. & Controls Corp.*, 294 Ore. 94, 654 P.2d 1092 (1982)..............................................................................................21, 26, 27

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848 (9th Cir. 1993)....................................6

*Amoco Production Co. v. Aspen Group*, 189 F.R.D. 614 (D. Colo. 1999)....................................20

*Anderson v. Abbott*, 321 U.S. 349 (1943)....................................26

*Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458 (D. Del. 1991)....................................25

*Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000) ......5, 6, 11, 14

*Blair v. Anderson*, 325 A.2d 94 (Del. 1974)....................................23

*Building Service 32B v. Vanderveer Estates Holding, LLC*, 127 F. Supp. 490 (S.D.N.Y. 2001)....................................23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)....................................11

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535 (9th Cir. 1986)....................................5

*California Pollution Control Financing Authority v. Agajanian*, 1993 U.S. App. LEXIS 8794 (9th Cir. 1993)....................................33

*Capital Markets Int'l, Ltd. v. Gelderman, Inc.*, No. 97-C-7717, 1998 WL 473468 (N.D. Ill. Aug. 7, 1998)....................................20

*Concept One Int'l, Inc. v. Nippecraft Ltd.*, No. 1:96-CV-565, 1997 WL 483248 (W.D. Mich. Feb. 14, 1997)....................................20

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993) ....................................5

*Cunningham v. National Broadcasting Co.*, No. 95-1833-MA, 1996 U.S. Dist. LEXIS 13343 (D. Ore. Mar. 6, 1996) ....................................16

*Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir. 1977)....................................11

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986)....................................10

*Draper v. Astoria School District No. 1C*, 995 F. Supp. 1122 (D. Or. 1998) ....................................34

LANE POWELL SPEARS LUBERSKY LLP
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON  97204-5183
(503) 778-2100

*Eulrich v. Snapp-on-Tools Corp.*, 853 P.2d 1350 (Ore. App. 1993) ..............................................34

*FDIC v. British-American Ins. Co.*, 828 F.2d 1439 (9th Cir. 1987) ..................................................5

*Faunce v. Bird*, No. 01-1048-BR, 2002 U.S. Dist. LEXIS 2255 (D. Ore. Jan. 14, 2002)............18

*Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir. 1985) ......................................20

*Gates Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir. 1984) ......................................................9

*Geyer v. Ingersol Pubs. Co.*, 621 A.2d 784 (Del. Cha. 1992) .........................................................35

*Gotham Ptnrs., L.P. v. Hallwood Realty Ptnrs., L.P.*, 2002 Del. LEXIS 559 (Del. Aug. 29, 2002) ..............................................................................................................................................22

*Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758 (9th Cir. 1990) ........................................5, 12

*Gregg v. Nylcare Health Plans, Inc.*, 2000 U.S. Dist. LEXIS 4002 (D. Ore. 2000) .....................34

*H.S.W. Enterprises v. Woo Lai Oak, Inc.*, 171 F. Supp. 2d 135 (S.D.N.Y. 2001).........................34

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408 (1984) ..................................5, 6

*Hessee Industries, Inc. v. Chemical Bank*, 508 F. Supp. 319 *aff'd.*, 661 F.2d 909 (2nd Cir. 1981) ............................................................................................................................................23

*Hirsch v. Blue Cross Blue Shield of Kansas City*, 800 F.2d 1474 (9th Cir. 1986) ..........................6

*Hockey v. Medhekar*, 30 F. Supp. 2d 1209 (N.D. Cal. 1998) ..........................................................28

*Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636 (C.D. Cal. 1983) ................................................28

*Ing. Hoschek Autoverleich GES.M.B.H. v. Balag, Ltd.*, No. 93-CIV-8513, 1994 WL 701989 (S.D.N.Y. Dec. 14, 1994)...........................................................................................20

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................................5, 13

*Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130 (2d Cir. 1993) .....................................22

*Kelly v. Tillotson-Pearson, Inc.*, 840 F. Supp. 935 (D.R.I. 1994) .................................................23

*Kofoed v. Rosendin Electric, Inc.*, 157 F. Supp. 2d 1152 (D. Or. 2001) .......................................31

*Lomayaktewa v. Hathaway*, 520 F.2d 1324 (9th Cir. 1975)...........................................................18

*Mieuli v. DeBartolo*, No. C-00-3225, 2001 WL 777477 (N.D. Cal. Jan. 16, 2001).....................28

- iii -

*Mobil Oil Corp. v. Linear Films*, 718 F. Supp. 260 (D. Del. 1989) ...............................................24

*Moore v. Westlawn Memorial Park*, 266 Ore. 244, 512 P.2d 1344 (1973) ...................................30

*Motion, Inc. v. Environmental Tectonics Corp.*, 196 F. Supp. 2d 1051 (D. Or. 2001)....................9

*Newman v. Comprehensive Care Corp.*, 794 F.Supp. 1513 (D. Or. 1992) ...............................9, 11

*Occidental Fire & Casualty Co. of No. Carolina v. Great Plains Capital Corp.*, 1997
U.S. App. LEXIS 5333 (9th Cir. 1997) ...........................................................................23

*Official Committee of Unsecured Creditors v. Fleet Retail Financial Group*, 280 B.R. 90
(D. Del. Bkry. 2002) .......................................................................................................35

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995).....................................10

*Onyx Waste Services v. Mogan*, 203 F. Supp. 2d 777 (E.D. Mich. 2002) ...............................19, 20

*Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724
(Del. Super. Ct. 1996) ...........................................................................................24, 25, 29

*Panavision International L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ...................................11

*Pierce v. Int'l Ins. Co. of Illinois*, 671 A.2d 1361 (Del. 1996)..........................................................33

*Planet Footwear, S.A. v. British Knights International, Inc.*, 1999 U.S. Dist. LEXIS
15726 (S.D.N.Y. 1999) ...................................................................................................23

*Rice v. Comatek Mfg. of Oregon, Inc.*, 766 F. Supp. 1550 (D. Or. 1990) .....................................30

*Richmark Corp. v. Timber Falling Consultants, Inc.*, 1989 U.S. Dist. LEXIS 8291 (D.
Ore. 1989) .........................................................................................................22, 32, 33

*Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors*, 46 Ore. App. 199, 611 P.2d 658
(1980).....................................................................................................................5, 32

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991).............................................................5, 14

*Schlumberger Logelco Inc. v. Morgan Equip. Co.*, 1996 WL 215951 ...........................................22

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 199) .........................................................9

*Stirling-Wanner v. Pocket Novels, Inc.*, 129 Or. App. 337, 879 P.2d 210 (1994)...................28, 29

*Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815 (9th Cir. 1985).....................................16

LANE POWELL SPEARS LUBERSKY LLP
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-5183
(503) 778-2100

*Thompson v. Telephone & Data Sys., Inc.*, 130 Ore. App. 302, 881 P.2d 819 (1994) ..................32

*Top Serv. Body Shop v. Allstate Ins. Co.*, 283 Ore. 201, 582 P.2d 1365 (1978)...........................32

*Uptown Heights Associated Limited Partnership v. Seafirst Corp.*, 320 Or. 638, 891 P.2d 639 (1995)...................................................................................................................34

*Vandersel v. Pope*, 963 P.2d 130 (Ore. App. 1998)........................................................................34

*Virginia Surety Co. v. Northrop Grumman Corp.*, 144 F.3d 1243 (9th Cir. 1998)...........15, 16, 18

*Wallulis v. Dymowski*, 323 Ore. 337, 918 P.2d 755 (1996)............................................................30

*Wattenburg v. United Medical Lab.*, 269 Ore. 377, 525 P.2d 113 (1974).....................................31

*Welch v. Bancorp Management Advisors, Inc.*, 296 Or. 208, 675 P.2d 172 (1983).......................33

*Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 781 P.2d 1196 (1989)......................................30

*Wollam v. Brandt*, 154 Ore. App. 156, 961 P. 2d 219 (Or. App. 1998) .........................................30

## STATUTES AND RULES

Fed. R. Civ. P. 19...........................................................................................14, 15, 16, 17

Or. Rev. Stat. § 60.151................................................................................................25, 26

LANE POWELL SPEARS LUBERSKY LLP
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-5183
(503) 778-2100

## I.    INTRODUCTION

The moving defendants respectfully submit this memorandum in support of their motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2), (6) and (7).

The Court should dismiss plaintiff Fred Fields' ("Fields") complaint for three reasons. First, this Court lacks personal jurisdiction over defendants. Fields brought this action against 15 defendants. The moving defendants, Three Cities Research, Inc., Three Cities Fund III, LP, TCR Friends III, LP, TCR Co-Investors III, LLC, TCR GP, LLC, TCR Management, Inc.,[1] Willem F. P De Vogel, Darryl Dillenback, Daniel Hornbarger, J. William Uhrig, Thomas G. Weld, James

---

[1] TCR Management, Inc. is named as a defendant in the caption of the Complaint but not identified as a party in the text of the Complaint. For purposes of the Rule 12(b) analysis, this motion assumes that TCR Management is a defendant in the case.

PAGE 1 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Wojtila, W. Robert Wright,[2] (the moving defendants are collectively referred to as "Defendants"), lack sufficient minimum contacts with Oregon to permit this Court to exercise general or specific jurisdiction over any of them. None is a resident of Oregon; none has a residence in Oregon; none is incorporated in Oregon; none regularly conducts business in Oregon; none has an Oregon license; and none has designated an agent for service of process in Oregon. Further, the alleged facts making the basis of Fields' causes of action do not relate to and do not arise from actions or omissions occurring principally in Oregon but to actions and omissions that took place, if at all, principally in New York, Ohio, and Delaware.

A connection to the forum lies in the plaintiff's sale to a third party – CMC Acquisition Company, Inc. ("CMC"), which is not a defendant in this action – of a company that has an office in Oregon, Coe Manufacturing Company ("Coe"), an Ohio corporation with its principal place of business in Painesville, Ohio. The other connections to Oregon are attenuated at best.

Second, although practically all of Fields' claims sound in contract, Fields has failed to join two indispensable parties – CMC and Coe – the parties that entered into the contracts upon which Fields sues.

Third, Fields' complaint fails to state a claim upon which relief may be granted. Fields' claims attempt to impose liability on Defendants for the contractual obligations of CMC, but the facts alleged by Fields, even if true, are not sufficient to state a cognizable claim.

## II.    BACKGROUND FACTS

---

[2] No responsive pleading is being filed on behalf of Composicorp Holdings LLC because Composicorp Holdings LLC has not been served in this action.

PAGE 2 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

This is a classic case of a plaintiff who entered into a contract with an entity that eventually became insolvent, and now seeks to have his claims satisfied out of the assets of shareholders as well as other loosely connected entities and individuals.

This action is the second lawsuit relating to Fields' dispute with CMC. A dispute arose between CMC and Fields relating to Fields' sale of Coe to CMC. CMC alleged that Fields deliberately misrepresented material facts to CMC and omitted material and necessary facts regarding Coe in order to fraudulently induce CMC into purchasing Coe. CMC suspended payment to Fields under the purchase agreement and claimed several millions of dollars in damages caused by Fields' fraud and misconduct. Fields sued CMC for payment in an action styled *Fields v. CMC*, Case No. 01-1131-ST (D. Ore.). In that action, Fields asserted claims alleging that CMC breach a subordinated note and a guaranty of a consulting agreement. CMC counterclaimed for fraudulent inducement and breach of representations and warranties. That litigation was stayed when CMC filed a Chapter 7 bankruptcy petition in the U.S Bankruptcy Court for the District of Delaware.

In response to CMC's bankruptcy filing, Fields instituted this action. This time Fields has brought claims against directors of CMC, shareholders of CMC, a corporate entity alleged to control CMC, and individuals employed by an agent for certain shareholders of CMC. Fields filed this action allegedly because "of the Defendants' actions resulting in avoiding paying Fields $15 million, the remaining unpaid portion of the purchase price for stock in his company," Coe. *See* Complaint ¶ 1. Fields alleges that Defendants breached contractual or other duties allegedly owed to him by allegedly causing CMC not to pay Fields under agreements that he had executed with CMC, by allegedly inadequately capitalizing Coe, a subsidiary of CMC, by allegedly improperly allowing a capital infusion in Coe, by allegedly causing Coe to spend $500,000 to construct improvements to the Coe Ohio facility, by allegedly causing Coe to purchase the stock

PAGE 3 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

or assets of Coastal Machinery, Inc., by allegedly directing CMC and Coe not to provide Fields with Coe's financial statements and not to notify Fields of board meetings, by allegedly causing Coe to issue preferred stock, and by allegedly causing CMC to file a Chapter 7 bankruptcy petition. *See id.* ¶¶ 1, 20-22.

## III.    PERSONAL JURISDICTION OVER THE DEFENDANTS IS LACKING

As a threshold matter, personal jurisdiction if lacking here. There is no basis for general jurisdiction. None of the Defendants is a resident of Oregon. As set forth in their declarations, the Defendants do not maintain residences in the State of Oregon; they do not have bank accounts in the State of Oregon; they do not pay taxes in the State of Oregon; they do not regularly conduct business in the State of Oregon; they have not designated registered agents for service in the State of Oregon. *See* Defendants' Declarations, Exhibits 1 through 7 to this Motion. They have been in the State of Oregon infrequently, if at all. Defendants were served with the Plaintiff's Complaint either by mail or through Delaware registered agents, outside the State of Oregon.

Specific jurisdiction is also lacking. The alleged events making the basis for Fields' claims against the Defendants took place principally outside of Oregon. The defendant directors of CMC met outside of Oregon to decide on the purchase of Coe, on the amendment to Coe's articles of incorporation, and on the filing of CMC's Chapter 7 bankruptcy petition. The Fund III defendants allegedly acted or failed to act in infusing cash into Coe – outside of Oregon. The remaining factual allegations set forth in the Complaint similarly reference alleged acts or omissions that occurred principally outside of Oregon – in New York, Ohio or Delaware.

### A.    Applicable Legal Standard

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a court may exercise personal jurisdiction over non-resident defendants only if it

PAGE 4 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

finds that the defendants have sufficient "minimum contacts" with the forum such that exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U S 310, 316 (1945). It is the plaintiff's burden to allege and to prove sufficient facts to establish personal jurisdiction over a defendant. *FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir 1987); *Butcher's Union Local No. 498 v SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986).[3]

The Supreme Court's minimum contacts standard recognizes two categories of *in personam* jurisdiction – specific and general. *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). Specific jurisdiction exists when the cause of action arises out of or is related to the nonresident defendant's contact with the forum state. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 415 n.8 (1984). General jurisdiction exists only when the defendant has sufficient systematic and continuous contacts with the forum state. *Helicopteros Nacionales*, 466 U.S. 408, 415-17. Finally, even where there are sufficient contacts between the nonresident defendant and the forum state to serve as a basis for personal jurisdiction, such jurisdiction is limited by considerations of reasonableness, fair play and substantial justice. *International Shoe*, 326 U.S. at 316; *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

**B.    The Court Does Not Have General Personal Jurisdiction Over Any of the Defendants**

---

[3] "Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp v Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir 1993). Oregon's general civil provisions concerning jurisdiction are governed by Oregon Rule of Civil Procedure 4, which confers jurisdiction to the outer limits of due process. *Gray & Co v. Firstenberg Mach. Co*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4L), *British-American Ins Co.*, 828 F.2d at 1441. Thus, the jurisdictional inquiry under the Oregon rules and the principles of due process may be conducted as one and the same analysis. *See Core-Vent*, 11 F.3d at 1482.

PAGE 5 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

When the defendant is not a resident of the forum state, courts may exercise general jurisdiction only if it can be proven that defendant's contacts with the forum state constitute "continuous and systematic" general business contacts. *Helicopteros Nacionales*, 466 U.S. at 416; *Bancroft & Masters*, 223 F.3d at 1086. Courts in this Circuit uniformly require that the "continuous and systematic" or "substantial" contacts with the forum state be considerable and extensive before the courts will exercise general jurisdiction. *See Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851 n. 3 (9th Cir. 1993) (the Ninth Circuit has "regularly declined to find general jurisdiction even where the contacts were quite extensive"). Thus, the general jurisdiction standard is "fairly high" and requires the contacts to be of the sort that approximates physical presence within the forum state. *Bancroft & Masters*, 223 F.3d at 1086. Pertinent factors to consider in an analysis of general jurisdiction include whether the defendant:

1.    makes sales, solicits, or engages in business in the state;

2.    serves the state's markets;

3.    designates an agent for service of process;

4.    holds a state license; or

5.    is incorporated in the state.

*Bancroft & Masters*, 223 F.3d at 1086 (citing *Hirsch v. Blue Cross Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986)).

**1.    The Corporate Defendants: Three Cities Fund III LP, TCR Friends III LLC, TCR Co-Investors III LLC, TCR GP LLC, TCR Management, Inc., Three Cities Research, Inc.:**

Each of the defendant entities was formed under the laws of Delaware and maintains its principal place of business in New York City, New York. *See* Declaration of Willem de Vogel, ¶¶ 3-8, Exhibit 1 to this Motion. None is incorporated in Oregon and none maintains its principal place of business in Oregon. None of the entities has a physical presence in Oregon –

PAGE 6 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

they do not maintain an office in Oregon, have any employees in Oregon, have any warehouses or showrooms in Oregon, own any real property in Oregon, or have any telephone listings in Oregon. None of the entities has a bank account in Oregon. *Id.* at ¶ 9. None pays taxes in Oregon. *Id.* at ¶ 11. None of the entities makes sales, solicits, or engages in regular business in Oregon. *Id.* at ¶ 12. None advertises its business in local Oregon periodicals and none recruits its employees from Oregon. *Id.* None has designated a registered agent for service of process in Oregon. *Id.* at ¶ 14. Each of the entities was served outside the state of Oregon. *Id.* In short, none conducts regular business in Oregon or has a physical presence.

Further, none of the entities' employees or agents has made frequent or long trips to Oregon. *See id.* at ¶ 13. *See also* Declarations of Daniel Hornbarger, J. William Uhrig, Thomas G. Weld, W. Robert Wright, Exs. 3-5 and 7 to this Motion. The bulk or the entirety of the personnel's time is spent outside of Oregon. *See* De Vogel Declaration, ¶ 13, Ex. 1 to this Motion.

**2.    The Individual Defendants: Willem F. P. De Vogel, Darryl Dillenback, Daniel Hornbarger, J. William Uhrig, Thomas G. Weld, James Wojtila, and W. Robert Wright:**

As detailed in their respective declarations, the individual defendants are not residents of Oregon and have never maintained residence in Oregon. *See* Declarations of De Vogel, Dillenback, Hornbarger, Uhrig, Weld, Wojtila, and Wright, Exs. 1-7 to this Motion. Messrs. de Vogel, Hornbarger and Uhrig are residents of New York. *See* Declarations of De Vogel, ¶ 16, Ex. 1, Hornbarger, ¶ 2, Ex. 3, and Uhrig, ¶ 2, Ex. 4. Messrs. Dillenback and Wojtila are residents of Ohio. *See* Declarations of Dillenback and Wojtila, ¶ 2, Exs. 2 and 6. Mr. Weld is a resident of Connecticut. *See* Weld Declaration, ¶ 2, Ex. 5. Mr. Wright is a resident of Colorado. *See* Wright Declaration, ¶ 2, Ex. 7. None of the Defendants has any family in Oregon, any

PAGE 7 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

property in Oregon, any Oregon bank accounts, any Oregon telephone listings, any Oregon licenses. None of the Defendants pays taxes in Oregon.

None of the Defendants regularly conducts business in Oregon. All have offices outside of Oregon, New York for Messrs. De Vogel, Hornbarger, Uhrig, Weld, and Wright, Ohio for Messrs. Dillenback and Wojtila. All were served outside of Oregon, in their New York or Ohio offices. Their travels to Oregon have been minimal, infrequent and short:

- Mr. De Vogel, for instance, who takes approximately 40 business trips per year, has taken fewer than 10 trips to Oregon in his lifetime. *See* De Vogel Declaration, ¶¶ 21, 23-25, Ex. 1 to this Motion. None of his trips were personal, each related generally to Coe, first to its acquisition from Fields, then to its general business and to negotiations with Fields to resolve acquisition disputes.

- Mr. Hornbarger, who takes approximately 25 trips per year for business, has been to Oregon roughly 6 times in his life, for no more than 3 days at a time. *See* Hornbarger Declaration, Ex. 3 to this Motion. He had not been to Oregon until June 2000, after the Coe acquisition, and has not been since December 2001. He has not taken any personal trips to the state.

- Mr. Uhrig has taken only 2 isolated trips to Oregon in his life, for a total of no more than 4 days in the state, and has not been to Oregon in the last four or five years. *See* Uhrig Declaration, Ex. 4 to this Motion.

- Mr. Weld, who takes roughly 45 business trips per year, has taken roughly 14 business trips to Oregon in his life. *See* Weld Declaration, Ex. 5 to this Motion. Each trip lasted no more than 2 days. He took one personal two-day trip to Oregon in 1999.

- Mr. Wright also travels a great deal for business, taking approximately 25 trips per year. *See* Wright Declaration, Ex. 5 to this Motion But he has traveled to Oregon only 5 times in his life, for trips lasting no more than 4 days, and as little as half a day. In March 2001, he took a vacation that included one day in Oregon.

As to Messrs. Dillenback and Wojtila, both are officers of Coe, which has a facility in Oregon. They both have visited that facility from time to time, on short trips. *See* Declarations of Dillenback and Wojtila, Exs. 2 and 6 to this Motion.

- Mr. Dillenback, who has spent roughly 70 percent of business days traveling, has taken less than 20 trips to Oregon, on a bi-monthly basis and then on a monthly basis, since September 2000. *See* Dillenback Declaration, Ex. 2 to this Motion. Each trip has lasted no more than 3 to 5 days. He has not taken any personal trips to the state.

PAGE 8 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

- Mr. Wojtila had not traveled to Oregon in his lifetime until March 2001, and has since taken a total of 7 trips to the state, each lasting an average of 3.5 days. *See* Wojtila Declaration, Ex. 6 to this Motion. He has not taken any personal trips to Oregon in his lifetime.

In short, as their declarations detail, the Defendants basically live and work outside of Oregon. The bulk of their time if not all of it is spent outside the state. Their contacts with Oregon – in their entire lifetimes – are minimal, and certainly far from continuous, systematic, substantial, or extensive.

### 3.    Conclusion as to General Jurisdiction

Courts have previously rejected as insufficient contacts far more extensive than the contacts of the Defendants in this case. In *Shute v. Carnival Cruise Lines*, for example, the Ninth Circuit held that the defendant's activities were insufficient to support an exercise of general jurisdiction even though the defendant advertised in local media, mailed brochures, and paid commissions to travel agents, conducted promotional seminars, and sold vacation cruises to residents within the forum state. 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds* 499 U.S. 585 1991). In explaining its holding, the Court noted that the defendant had no offices in the forum state, no agents in the forum state, was not registered to do business in the forum state, and had not paid taxes in the forum state. *Id.*

In *Gates Learjet Corp. v. Jensen*, the Court held that several visits and purchases in the forum, solicitation of a contract in the forum including a choice of law provision favoring the forum, and extensive communication with the forum were not sufficient to support a finding of general jurisdiction. 743 F.2d 1325, 1330-31 (9th Cir. 1984); *see also Motion, Inc. v. Environmental Tectonics Corp.*, 196 F. Supp. 2d 1051 (D. Or. 2001) (defendant's contacts with forum, including telephone calls, emails, correspondence and possible visits, all related to single project, too attenuated to support general jurisdiction); *Newman v. Comprehensive Care Corp.*,

PAGE 9 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

LANE POWELL SPEARS LUBERSKY LLP
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-5183
(503) 778-2100

794 F.Supp. 1513, 1519 (D. Or. 1992) (no general jurisdiction despite the fact that the defendant solicited commercial loans in Oregon, engaged in national advertising, filed at least three debt collection lawsuits, and had about 20 trust beneficiaries in Oregon for whom it served as a trustee). If the contacts of defendants in the above cases were insufficient to permit the exercise of general jurisdiction, then the Defendants' minimal contacts with Oregon in this case should certainly be held to be insufficient for general jurisdiction to apply.

In sum, none of the Defendants has contacts with Oregon of the nature, quality and quantity that approximate physical presence in Oregon. None meets any of the pertinent five factors set out by the Ninth Circuit. This Court should refuse to exercise general jurisdiction over the Defendants because they lack the requisite extensive, substantial, continuous and systematic contacts with the forum state of Oregon.

### C.    The Court Does Not Have Specific Personal Jurisdiction Over Any of the Defendants

#### 1.    Specific Jurisdiction Standard

Specific jurisdiction may be exercised when the controversy is "sufficiently related to" or "arose out of" the defendant's contacts with the forum state. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). To establish specific jurisdiction, a plaintiff must submit evidence establishing each element of the following three-part test:

(a)    defendant must have purposefully availed itself of the privileges of conducting activities in the forum by some affirmative act or conduct; and

(b)    the claim must arise out of or result from the defendant's forum-related activities; and

(c)    the exercise of jurisdiction must be reasonable.

PAGE 10 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Panavision International L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (quoting *Omeluk*, 52 F.3d at 270); *Decker Coal*, 805 F.2d at 839; *Data Disc, Inc  v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977); *Newman*, 794 F. Supp. at 1519.

 With regard to the first requirement, in order to have purposefully availed oneself of the benefits of a forum, one must have "'deliberately engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'" *Gray & Co* , 913 F 2d at 760 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)). The requirement protects a nonresident from being haled before a court solely because of "attenuated" contacts. *Burger King*, 471 U.S. at 475-76

 With regard to the second requirement, "the contacts constituting purposeful availment must be the ones that give rise to the current suit" and this is measured "in terms of 'but for' causation." *Bancroft & Masters*, 223 F.3d at 1087.

 In this case, neither requirement is met.  Defendants did not purposely avail themselves of the privileges of conducting activities in Oregon.  In the Complaint, the only allegation relating expressly to jurisdiction is that "a substantial part of the events or omissions giving rise to this action occurred in this district; the Purchase Agreement, the Seller Note, the Guaranty and the Consulting Agreement were negotiated and executed in Oregon, and Fields resides in this district."  Complaint ¶ 5.  But the events and omissions allegedly making the basis for the Plaintiff's claims result from alleged actions and omissions that took place outside of Oregon and were directed outside of Oregon.

 The negotiations relating to the purchase agreement took place inside and outside of Oregon.  A third party initially brought Coe to the attention of Three Cities Research, in New York.  CMC's directors held a meeting, in New York, to approve the purchase of Coe.  *See* Complaint ¶ 11.  Subsequent contacts by certain Defendants with Fields in Oregon and due

PAGE 11 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

diligence conducted partly in Oregon, described as efforts to close the deal, were part of the negotiations initiated in and focused in New York. *See Gray & Co.*, 913 F.2d at 760-61 (in a contract action, contacts with the forum consisting of phone calls, letters, fell "in the category of 'attenuated contacts' insufficient in themselves to establish defendants have purposefully availed themselves of the benefits and protections of the forum's law."). Defendants Dillenback, Hornbarger, Uhrig and Wojtila took no trips at all to Oregon during the negotiations prior to the acquisition.

The purchase agreements, wherever executed, were not executed by any of the Defendants.[4] The agreements did not contemplate any continuing obligations by Defendants, let alone any contacts with Oregon under the contracts.

After the execution of the agreements, the acts and omissions complained of, assuming their truth for purposes of this motion, occurred principally outside of Oregon. For instance, payment was withheld from outside of Oregon, allegedly caused by the acts of certain Defendants, also acting outside of Oregon. Similarly, Plaintiff's allegation that Defendants "caus[ed] Coe to spend $500,000 to construct improvements to the Painesville facility" relates to an alleged act in Painesville, Ohio, and in New York, not Oregon. *See* Complaint ¶ 20(c)

Further, the alleged acts relating to the capital infusion, such as the allegation that "TCR caused CMC to issue preferred voting stock," took place, if at all, outside of Oregon, in New York and Ohio. *See* Complaint ¶ 20(f). The infusion was directed at Coe, and allegedly at CMC, both companies incorporated and with their principal places of business outside of Oregon. Voting stock was allegedly issued by CMC in New York, directed to an entity in New

---

[4] Robert Wright executed the Agreements on behalf of CMC, in his capacity as President of CMC, not in his individual capacity nor in his capacity as an agent of TCR.

PAGE 12 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

York, as well as to CMC and Coe, each incorporated outside of Oregon with their principal places of business outside of Oregon.

With regard to the bankruptcy, the Chapter 7 bankruptcy petition was indisputably filed in Delaware. The directors' meeting and other events relating to the filing took place in New York, Ohio and Delaware. The fact that certain alleged acts, such as the capital infusion and the bankruptcy, allegedly had an effect on Fields, a CMC and Coe creditor residing in Oregon, is insufficient. The fact that the bankruptcy stayed litigation pending in Oregon is insufficient. A mere foreseeable effect in the forum is not a basis for jurisdiction, when the action was directed outside of the forum.

In short, the majority of Fields' allegations of breach involve alleged acts and omissions that took place outside of Oregon. As detailed in the attachments, the Defendants' contacts with Oregon did not relate specifically or directly to the substantial majority of the alleged acts and omissions that make the basis for Fields' claims. *See* De Vogel Declaration, ¶ 21, Ex 1 to this Motion; *see also* Dillenback Declaration, ¶¶ 8-9, Ex. 2 to this Motion; Hornbarger Declaration, ¶¶ 8-9, Ex. 3 to this Motion; Uhrig Declaration, ¶ 9, Ex. 4 to this Motion; Weld Declaration, ¶¶ 10-11, Ex. 5 to this Motion; Wojtila Declaration, ¶ 12, Ex. 6 to this Motion; Wright Declaration, ¶¶ 8-10, Ex. 7 to this Motion. Any contacts with or effects in Oregon were attenuated, and insufficient to create a basis for the exercise of specific jurisdiction over these Defendants.

### D. The Exercise of Personal Jurisdiction Over the Defendants Would Be Unreasonable and Would Offend Traditional Notions of Fair Play and Substantial Justice

Even if this Court should find that the Defendants purposefully established minimum contacts with the State of Oregon, the Court should decline to exercise personal jurisdiction over the Defendants because maintenance of the suit would be unreasonable and would not comport with traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316.

PAGE 13 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The reasonableness determination requires consideration of several factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Bancroft & Masters*, 223 F.3d at 1088. None of the factors alone is dispositive; courts balance all seven factors in each case. *Roth*, 942 F. 2d at 623. The Defendants are all located outside of Oregon, principally in New York. The Defendants' alleged acts and omissions occurred, principally in New York, as well as in Ohio and Delaware. The pertinent witnesses and documents are likely located in New York, Delaware and Ohio  The Defendants did not direct their actions to Oregon, but rather directed their alleged actions toward CMC and Coe, a Delaware corporation with its principal place of business in Ohio, and an Ohio corporation with its principal place of business in Ohio, respectively.  The principal connection to the forum state is Fields.  Although he would undoubtedly prefer to litigate this matter in this district, such litigation would be unfairly burdensome and expensive for the numerous Defendants.  The forum state lacks a sufficient interest in adjudicating this dispute arising out of events that occurred outside the forum by persons and entities outside the forum.

## IV.    THE COURT SHOULD DISMISS FIELDS' COMPLAINT FOR FAILURE TO JOIN INDISPENSABLE PARTIES

The determination of whether a non-party qualifies as an indispensable party pursuant to Federal Rule of Civil Procedure 19 is a two-step inquiry:

> First, a court must determine whether an absent party should be joined as a "necessary party" under subsection (a).  Second, if the court concludes that the nonparty is necessary and cannot be joined for practical or jurisdictional reasons, it must then determine under subsection (b) whether in "equity and good

PAGE 14 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

conscience" the action should be dismissed because the nonparty is "indispensable."

*Virginia Surety Co. v. Northrop Grumman Corp*, 144 F.3d 1243, 1248 (9th Cir. 1998).  The Court should dismiss Fields' claim because CMC is both a necessary party and an indispensable party to this action.

### A.    CMC And Coe Are Necessary Parties

CMC is a necessary party pursuant to both Rule 19(a)(2)(i) and 19(a)(2)(ii) because CMC is the contracting party with respect to the contract-related claims asserted by Fields.[5]  *See* Compl. ¶ 1 ("On April 28, 2000, Fields sold the stock of Coe to [CMC] pursuant to a Stock Purchase Agreement, dated March 8, 2000 . . . .").  CMC executed the Stock Purchase Agreement, the Subordinated Note, and the Guaranty.  Coe is also a necessary party because it is the contracting party with respect to the Consulting Agreement.  *See* Complaint ¶¶ 15-16

With respect to Rule 19(a)(2)(i), there is no question that CMC – as the party to the contracts identified in Fields' complaint – has an interest in the resolution of Fields' claims. There are two principal issues to be litigated in the present action: (1) whether CMC breached its contractual obligations to Fields; and (2) whether Defendants are somehow liable for any breach

---

[5] Rule 19(a) provides as follows with respect to necessary parties:

> (a)  Persons to Be Joined if Feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest . . . .

Fed. R. Civ. P. 19(a).

PAGE 15 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

LANE POWELL SPEARS LUBERSKY LLP
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-5183
(503) 778-2100

by CMC notwithstanding CMC's status as a separate corporate entity. As to the first of these questions, CMC has a clear interest in defending against the allegations of breach. Any judgment against Defendants in this action necessarily would be based on a finding that CMC breached its contractual obligations to Fields. *See Virginia Surety Co.*, 144 F.3d at 1248 (recognizing that the contracting parties are necessary to a breach of contract action); *Cunningham v. National Broadcasting Co.*, No. 95-1833-MA, 1996 U.S. Dist. LEXIS 13343, at *7 (D. Ore Mar. 6, 1996) (finding a party necessary where it faced potential claims based on the same subject matter).

Such a ruling potentially could impact CMC because Fields undoubtedly would argue that a finding in this action that CMC breached its obligations against Fields is binding, or at least relevant, to a claim by Fields against CMC. For example, a judgment theoretically could be entered in the present action finding that CMC breached its contractual obligations to Fields but that Defendants are not liable as CMC's alter ego In such a case, Fields undoubtedly would use the finding of a breach in his pursuit of a claim against CMC. As the Ninth Circuit has observed, the Court "need not conclusively determine how collateral estoppel would operate in future litigation" because "Rule 19 speaks to possible harm, not only to future harm." *Takeda v. Northwestern Nat'l Life Ins. Co*, 765 F.2d 815, 821 (9th Cir. 1985).

With respect to Rule 19(a)(2)(ii), CMC is a necessary party because Defendants would face a significant risk of inconsistent judgments if Fields' claims are litigated in an action in which CMC is not a party. If Defendants were held liable under Fields' theory of alter ego liability, Defendants would have a claim that CMC, as the breaching party, is primarily liable and that Defendants are therefore entitled to contribution or indemnification from CMC. With CMC not a party to this action, Defendants run the risk that they could be found liable in this action based on CMC's supposed breach of contract, but that CMC could prevail in a

PAGE 16 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

contribution action on the grounds that it breached no obligation to Fields.[6]  Thus, CMC is a necessary party both because it has a protectible interest in the claims asserted in this action and because Defendants would be subjected to the risk of inconsistent judgments if Fields' claims are litigated in an action that does not include CMC.

Similarly, Coe is a necessary party because the claims of breach of the Guaranty are based on a claim that Coe breached the Consulting Agreement.  Fields has sued Coe for breach of the Consulting Agreement in a separate action in this district, and represented by different counsel.  Miller Nash LLP, represented the Plaintiff in this action, represented Coe in connection with the purchase transaction and was conflicted from bringing suit against Coe under the Consulting Agreement.  Any judgment against Defendants in this action under the Guaranty would be based necessarily on a finding that Coe breached its contractual obligations to Fields.  Thus, under the principles set forth above, Defendants face a risk of inconsistent judgments if they are found liable based on Coe's supposed breach of the Consulting Agreement and then Coe is found in its separate action not to have breached the Consulting Agreement

## B.    CMC And Coe Are Indispensable Parties

The determination whether an absent party is an indispensable party is based on a consideration of four factors:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

---

[6] Of course, if the present defendants would suffer no prejudice because a finding of breach somehow would be binding on CMC, such a result demonstrates why litigation of Fields' claims could not go forward in this action without prejudicing CMC.

PAGE 17 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Fed. R. Civ. P. 19(b). As noted in Fields' complaint, CMC has filed a petition for bankruptcy, so it is not feasible to join CMC as a party to the present action. *See* Compl. ¶ 1. Therefore, Fields' complaint must be dismissed if CMC is an indispensable party.

CMC and Defendants would suffer unfair prejudice if Fields' claims were permitted to go forward in an action to which CMC and Coe are not a party  Fields' claims explicitly seek a finding that CMC has breached its contractual obligations to Fields, as well as a finding that CMC and Defendants are alter egos. CMC has an obvious interest in litigating Fields' claim that CMC's corporate form is meaningless, and CMC would be prejudiced if such a determination were made in an action to which it was not a party. Moreover, as discussed above, if a finding in this action that CMC has breached its contractual obligations to Fields is binding on CMC, CMC would be prejudiced if this case proceeded without CMC. Conversely, if a finding of a breach of contract in this action is not binding on CMC, Defendants would be prejudiced by the possibility of inconsistent judgments in a subsequent action for contribution or indemnification from CMC. Indeed, in *Faunce v. Bird*, No. 01-1048-BR, 2002 U.S. Dist. LEXIS 2255 (D. Ore. Jan. 14, 2002), the Court dismissed a breach of fiduciary duty action because either the defendants or the absent party would suffer prejudice if the action proceeded to trial:

> As noted, Robert Faunce claims an interest in the subject matter of this action, and his interest may be harmed if he is not joined. Defendants, too, may suffer prejudice from Robert Faunce's absence in the form of exposure to double or inconsistent obligations to the two beneficiaries if Robert Faunce decides to seek relief on his own behalf in state court.

*Id.* at \*13-14; *see also Virginia Surety*, 144 F.3d at 1248 ("[N]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or contract, all parties who may be affected by the determination of the action are indispensable." (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975))). Therefore, the likelihood of prejudice to either Defendants or CMC strongly favors dismissal.

PAGE 18 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Given that Fields' claim is based on an allegation that CMC breached its contractual obligations, it would be impossible for the Court to shape the relief available in this action to avoid the prejudice discussed above. If the Court sought to eliminate any prejudice to CMC by holding that this action is not binding on CMC, such a ruling would only magnify the prejudice that Defendants would suffer and increase the risk of inconsistent judgments. Moreover, if the Court sought to eliminate the prejudice to Defendants by holding that any ruling would be binding on CMC for contribution and indemnification purposes, such a ruling would prejudice CMC by having its obligations determined in an action where it is not a party. Thus, the second and third factors favor dismissal because any judgment in Fields' favor in this action necessarily would be unfairly prejudicial to either Defendants or CMC depending on the extent to which CMC were bound by the result in this action.

With respect to the fourth factor, an alternative forum exists in that Fields may file a claim against CMC in its Delaware bankruptcy. Indeed, given that the entire Bankruptcy Code is designed to ensure that a debtor's liabilities are determined in a single forum, it makes perfect sense that Fields' claim, which, after all, is based on CMC's alleged breach of contract, should proceed within CMC's bankruptcy. Such a result also is fair to Fields, in that Fields voluntarily entered into contracts solely with CMC, making it entirely foreseeable at the time of contracting that any claim by Fields against CMC would be litigated in a bankruptcy proceeding in the event that CMC filed for bankruptcy.

Indeed, a myriad of courts have recognized the practical reality that a corporation is an indispensable party when a plaintiff asserts that some other person or entity are liable for the absent corporation's actions under an alter ego or related theory. For example, in *Onyx Waste Services v Mogan*, 203 F. Supp. 2d 777, 787 (E.D. Mich. 2002), the plaintiff had contracted with a corporation but sued only the parent company, alleging that the parent was the contracting

PAGE 19 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

corporation's alter ego.   Recognizing that "a contracting party is the paradigm of an indispensable party," *id*, the court dismissed the plaintiff's complaint largely because either the parent corporation or the subsidiary would be prejudiced if the plaintiff's alter ego claim proceeded without the contracting corporation:

> [I]t would be difficult for this Court to fashion a judgment on the facts of this case that would lessen or avoid prejudice to Defendant or the [contracting] corporation. In short, it is difficult to conceive how this Court can adjudicate the rights of the [plaintiff] under the agreement without considering Defendant's arguments regarding the [contracting] corporation.

*Id.* at 788.

Several other courts have come to the same conclusion, and have held that a corporation is an indispensable party when a plaintiff that contracted with the corporation seeks to impose alter ego liability on an affiliate. *See, e.g., Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 559 (5th Cir. 1985) ("Case law in this and other circuits uniformly supports the proposition that joinder of the subsidiary is required in such a situation [where the plaintiff asserts an alter ego claim]"); *Amoco Production Co. v. Aspen Group*, 189 F.R.D. 614, 616 (D. Colo. 1999) ("[T]he Hesters are indispensable parties whose joinder is necessary. . . .  If the United States shows that the alter ego doctrine applies, the court may disregard the corporate entity and consider the acts ostensibly taken by The Aspen Group to be those of the Hesters."); *Capital Markets Int'l, Ltd. v Gelderman, Inc.*, No. 97-C-7717, 1998 WL 473468, at *4 (N.D. Ill. Aug. 7, 1998) (holding that dismissal was appropriate where a plaintiff seeks to enforce a contract claim against an alter ego without the contracting corporation being named as a party); *Concept One Int'l, Inc. v. Nippecraft Ltd.*, No. 1:96-CV-565, 1997 WL 483248, at *10 (W.D. Mich. Feb. 14, 1997) ("However, Phoenix's alter ego relationship with Nippecraft renders Phoenix a party in whose absence complete relief cannot be accorded among the parties."); *Ing. Hoschek Autoverleich GES.M.B.H. v. Bulag, Ltd.*, No. 93-CIV-8513, 1994 WL 701989, at *3 (S.D.N.Y.

PAGE 20 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Dec. 14, 1994) (holding that a contracting corporation was an indispensable party to a suit alleging that related entities were liable for the corporation's contract obligations on an alter ego theory)

Reduced to its essentials, Fields seeks to litigate a claim that CMC breached its contractual obligations in an action in which CMC is not – and cannot be – a party. The prejudice that CMC and Defendants would suffer as a result of this piecemeal litigation is palpable, and the Court should dismiss Fields' complaint on that basis.

Similarly, Coe is an indispensable party. In its absence, Defendants face the risk of inconsistent judgments. Further, given that the breach of Guaranty claim is based on an allegation that Coe breached the Consulting Agreement, it would be impossible for the Court to shape the relief available to avoid the prejudice to Coe and to Defendants.

## V.  THE COURT SHOULD DISMISS FIELDS' COMPLAINT FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

Fields' complaint presents what the Oregon Supreme Court has called a "recurrent problem," whereby "a corporation alleged to be liable to a plaintiff, happens to be judgment-proof or nearly so, and the plaintiff seeks to have its claim satisfied out of the assets of a shareholder." *Amfac Foods, Inc. v. International Sys. & Controls Corp.*, 294 Or. 94, 654 P.2d 1092 (1982). Fields voluntarily entered into contracts with CMC and Coe, contracts that did not include any of the Defendants as parties and which were not guaranteed by any of the Defendants. Fields nevertheless seeks to pursue a smorgasboard of claims against those Defendants because CMC has filed for bankruptcy protection.

### A.  Counts I and II Fail to State a Cognizable Claim for Breach of Contract

Count I asserts a breach of CMC's Guaranty of a consulting agreement between Coe and Fields by Defendants who are not parties to the Guaranty. Specifically, Count I is brought

PAGE 21 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

against: (1) defendant TCR on the theory that TCR controlled CMC and caused CMC to breach the Guaranty; (2) the Fund III Investors Defendants on the theory that TCR was acting as the agent of the Fund III Investors in exercising control over CMC; and (3) the Directors of CMC based upon the theory that they were in a fiduciary relationship to Fields and nevertheless allowed TCR to render CMC insolvent. Count II is similar to Count I, asserting a claim for breach of the Seller Note between CMC and Fields. Count II runs against the same Defendants named in Count I and is based upon the same theories of liability featured in Count I. Neither count presents a cognizable claim.

The law of the state of incorporation governs claims alleging some form of alter ego liability. *See Schlumberger Logelco Inc. v. Morgan Equip. Co.*, 1996 WL 215951 (N.D. Cal 1996 ) (citing *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993)).[7] CMC is a Delaware corporation. *See* Complaint Ex. A at 1. Accordingly, Delaware law governs these claims.

Under Delaware law, only parties to a contract may be held liable under its terms. *Gotham Ptnrs., L.P. v. Hallwood Realty Ptnrs., L.P.*, 2002 Del. LEXIS 559, * 32 (Del. Aug. 29, 2002) ("It is a general principle of contract that only a party to a contract may be sued for breach

---

[7] Oregon law does not appear to provide a definitive standard regarding the state law to be applied to claims of alter ego liability. In *Richmark Corp v. Timber Falling Consultants, Inc.*, 1989 U.S. Dist. LEXIS 8291 (D. Ore. 1989), the court employed the "most significant relationship" test to determine which state law to apply to a claim of alter ego liability. The court examined (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Because the contract was negotiated primarily in Oregon, the subject matter of the contract was located in Oregon, the contract was to be performed in Oregon, and the plaintiff was incorporated in the state of Oregon, the court concluded that Oregon had the most significant interest in the contract and therefore applied Oregon law to a claim of alter ego liability.

PAGE 22 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

of that contract.") (citation omitted).[8]  Clearly, none of the Defendants named in Counts I and II were signatories to either the Seller Note or the Guaranty.  In the absence of an allegation that these Defendants were parties to the contract, Fields' claim fails as a matter of law.

Fields is aware of this limitation, and tries to sustain the breach of contract claims by allegations of control.  Specifically, Fields' complaint alleges that:

- Defendant Three Cities Research, Inc. ("TCR") "controlled CMC and Coe." Compl. ¶ 1.

- TCR created CMC "for the express purpose of acquiring Coe." Id.

- TCR exercised its control over CMC to cause CMC to issue preferred stock. Id.

- TCR exercised its control over CMC to cause CMC to file for bankruptcy protection. Id.

- TCR, as a result of its control over CMC, caused CMC to breach its contractual obligations to Fields.  Compl. ¶ 20.

All these allegations would establish, if proven, is that TCR controlled CMC.  The essence of Fields' complaint is that CMC breached its contractual obligations to Fields, and that these breaches were necessarily directed by TCR because TCR, as the entity supposedly controlling CMC, directed all of CMC's activities.  This fails to state a claim as a matter of law.

Under the law of Delaware, a court may hold other individuals or entities liable as alter egos for a corporation's debt only where those individuals:  (1) completely dominate and control the corporation;  and (2) use the corporate form to perpetuate fraud or something like it. *Occidental Fire & Casualty Co. of No. Carolina v. Great Plains Capital Corp.*, 1997 U.S. App.

---

[8] *See also Hessee Industries, Inc. v Chemical Bank*, 508 F. Supp. 319, 323 (S.D.N.Y.), *aff'd*, 661 F.2d 909 (2nd Cir. 1981) (an action for breach of contract will not lie against non-parties to the contract); *Building Service 32B v Vanderveer Estates Holding, LLC*, 127 F. Supp 490, 494 (S.D.N.Y. 2001); *Planet Footwear, S.A. v British Knights International, Inc*, 1999 U.S. Dist. LEXIS 15726 (S.D.N.Y. 1999) (defendants not parties to a contract are not proper defendants in a breach of contract action); *Kelly v Tillotson-Pearson, Inc.*, 840 F Supp 935, 944 (D.R.I. 1994).  Cf *Blair v. Anderson*, 325 A.2d 94 (Del. 1974) (general rule in Delaware is that a nonparty to a contract has no legal right to enforce it).

PAGE 23 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

LEXIS 5333, * 18-19 (9th Cir. 1997) (citations omitted). Fields does not allege that any of the Defendants used the corporate form of CMC to perpetrate fraud. That is fatal to these claims.

In *Outokumpu Engineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724 (Del. Super. Ct. 1996), the plaintiff sought to impose alter ego liability on a corporate parent on the theory that the parent company controlled its subsidiary and therefore caused the subsidiary to breach its contractual obligations to the plaintiff. The Delaware Superior Court rejected plaintiff's alter ego theory on the grounds that mere control of a subsidiary did not create alter ego liability, and a breach of contract by a subsidiary was not a fraudulent abuse of the corporate form:

> Because it is analogous to veil piercing, the alter ego theory requires that the corporate structure cause fraud or similar injustice. Mere dominion and control of the parent over the subsidiary will not support alter ego liability. The "injustice" must be more than the breach of contract alleged in the complaint, or even the burden of bringing the action in another forum. [Plaintiff] does not allege that [defendants] are involved in an elaborate shell game or are otherwise abusing the corporate form to effect a fraud.

*Id.* at 729.

Other courts applying Delaware law have come to the same conclusion, recognizing that claims of alter ego liability fail as a matter of law where the corporate form has not been used specifically to perpetrate a fraud. For example, in *Mobil Oil Corp. v. Linear Films*, 718 F. Supp. 260 (D. Del. 1989), the court rejected alter ego liability where: (1) the parent held all of the subsidiary's stock; (2) the parent guaranteed certain of the subsidiary's debts; (3) the parent and subsidiary had common officers and directors; and (4) the parent controlled the hiring and salaries of the subsidiary's officers, and approved the policies and major expenditures of the subsidiary. *Id.* at 266-67. In determining that the plaintiff's alter ego claim failed as a matter of law, the *Mobil Oil* court concluded that the allegations set forth above merely demonstrated control, but did not allege use of the corporate form to perpetrate a fraud. *Id.* at 267 (noting that

PAGE 24 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

alter ego liability requires that the corporate form be used to "work as a fraud or something in the nature of a fraud. *See also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1464 (D. Del. 1991) ("[W]e could easily reject the alter ego theory since Inc., Limited, and Holdings have preserved corporate formalities, and there is no evidence whatsoever of any fraud.").

Even when Fields' allegations are taken as true, they do not satisfy the pleading requirements under Delaware law for an alter ego claim. Fields does not allege that Defendants abused the corporate form in order to perpetrate a fraud; he simply alleges that TCR controlled CMC and caused CMC to breach its contractual obligations to Fields. This is precisely the theory of alter ego liability that was rejected by the Delaware Superior Court in *Outokumpu Engineering Enterprises*, 685 A.2d at 729, where the court held that causing a breach of contract was not the type of conduct that could support an alter ego claim.

Oregon law would dictate the same result. The Oregon Supreme Court has held that a party seeking to pierce the corporate veil must plead and prove specific facts beyond the mere exercise of control over the corporation in question. The mere statement of legal conclusions is not sufficient. The "facts" alleged by Fields, even if true, would prove nothing more than control of CMC by certain of the Defendants, rendering Fields' claim of liability insufficient as a matter of law.

Oregon Revised Statute § 60.151 explicitly provides for the limited liability of a corporation's shareholders:

> (1) A purchaser from a corporation of its own shares is not liable to the corporation or its creditors with respect to the shares except to pay the consideration for which the shares were authorized to be issued or specified in the subscription agreement.

> (2) A shareholder of a corporation is not personally liable for the acts or debts of the corporation merely by reason of being a shareholder.

PAGE 25 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Or. Rev. Stat. § 60.151. Indeed, as the Oregon Supreme Court has observed, "Limited liability is the rule, not the exception; and on that assumption large undertakings are rested, vast enterprises are launched, and huge sums of capital attracted." *Amfac Foods*, 294 Or. at 101, 654 P.2d at 1097 (quoting *Anderson v. Abbott*, 321 U.S. 349, 362 (1943)).

In *Amfac Foods*, the Oregon Supreme Court discussed in detail the facts that must be pleaded and proven in order to overcome the rule that a corporations debts are those of the corporation and no one else. *Id* at 102, 654 P.2d at 1098 ("Limited liability is the rule. We are concerned with defining the exception."). The court began with the observation that "[t]he disregard of a legally established corporate entity is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury." *Id.* at 103, 654 P.2d at 1098. After recognizing that piercing of the corporate veil is an extreme remedy, the *Amfac Foods* court stated the legal requirements for such a remedy as follows:

> When a plaintiff seeks to collect a corporate debt from a shareholder by virtue of the shareholder's control over the debtor rather than on some other theory, the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder. This causation requirement has two implications. The shareholder's alleged control over the corporation must not be only potential but must actually have been exercised in a manner causing the plaintiff to enter the transaction with the corporation or causing the corporation's default on the transaction or a resulting obligation. Likewise, the shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction or in preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff.

*Id.* at 108-09, 654 P.2d at 1101-02.

The *Amfac Foods* court identified four types of improper conduct that could, in appropriate circumstances, justify the disregard of corporate form: (1) inadequate capitalization; (2) milking of the corporation's assets; (3) misrepresentation, commingling of assets, or holding out the corporation and shareholder as being a single entity; and (4) conduct of a parent

PAGE 26 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

corporation's obligations through a subsidiary in violation of law. *Id.* at 109-10, 654 P.2d at 1102. Notably, all of the types of improper conduct identified as potentially supporting a finding of shareholder liability involved conduct that improperly blurred the separateness between the corporation and the shareholder. *Id.* at 112, 654 P.2d at 1103 ("The wrongful use of the corporation which causes the corporate entity to be disregarded must be conduct affecting the right of the party attempting to disregard the corporation and hold the individual.").

Fields' allegations in support of his claim of alter ego liability does not satisfy the pleading requirements announced in *Amfac Foods*, because all of the allegations, if true, merely would establish that certain of the Defendants controlled CMC. Because corporations are incorporeal entities, they lack the ability to engage in conduct on their own; they can only act through those who control them. If Fields' alter ego claim were deemed legally sufficient, a creditor could always plead an alter ego claim when a corporation allegedly breaches its contractual obligations by simply suing the directors, officers, employees, or shareholders who "caused" the corporation to breach its obligations. However, control of the type alleged by Fields is legally inadequate to plead a claim of alter ego liability:

> Ownership of all the stock of a corporation by one person, in and of itself, is insufficient to breach the wall of immunity created by O.R.S. 57.131(1). Nor is the control of the corporation by a shareholder, in and of itself, sufficient to support a claim for recovery that the shareholder's immunity should be disregarded.

*Id.* at 107, 654 P.2d at 1100.

Fields' complaint does not allege any of the improper conduct that would support the disregard of corporate form under Oregon law. Fields does not allege that TCR misrepresented the fact that TCR and CMC were separate corporate entities. Indeed, Fields' complaint admits his awareness of this fact, given that he negotiated with TCR but voluntarily entered into a contract with CMC. *See* Compl. ¶ 1. Fields does not allege that TCR disregarded corporate

PAGE 27 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

form by commingling TCR's and CMC's assets, or by "milking" CMC's assets in favor of TCR. Indeed, Fields does not allege that TCR controlled or operated CMC in violation of any statute.

Fields' only allegation of improper conduct of the sort identified by *Amfac Foods* as being sufficient to create shareholder liability is his claim of inadequate capitalization:

> TCR is liable to Fields for payment on the Guaranty because (a) TCR controlled CMC in causing it to execute the Guaranty and (b) TCR was in actual control of CMC and inadequately capitalized CMC for payment of the Guaranty as it became due . . . .

Compl. ¶ 31.

However, Fields offers no <u>facts</u> to support his legal conclusion that CMC was inadequately capitalized. As an initial matter, Oregon law and the law of this Circuit require that a plaintiff plead specific facts sufficient to support a claim or shareholder liability; the mindless recitation of legal conclusions is not sufficient. *Amfac Foods*, 294 Or. at 108 654 P.2d at 1101; *Hockey v. Medhekar*, 30 F. Supp. 2d 1209, 1211 n.1 (N.D. Cal. 1998) (holding that conclusory allegations of alter ego liability are not sufficient to withstand a Rule 12(b)(6) motion); *Hokama v. E.F. Hutton & Co.*, 566 F. Supp. 636, 647 (C.D. Cal. 1983) ("Conclusory allegations of alter ego status . . . are not sufficient."); *Mieuli v. DeBartolo*, No. C-00-3225, 2001 WL 777477, at *9 (N.D. Cal. Jan. 16, 2001) ("At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss.").

Moreover, while "gross undercapitalization" can support shareholder liability, "[t]he sufficiency of capital is determined at the time a corporation is formed and in the beginning of its operation." *Stirling-Wanner v. Pocket Novels, Inc.*, 129 Or. App. 337, 341, 879 P.2d 210, 213 (1994). Fields' complaint itself alleged that (1) CMC was created to acquire the stock of Coe, (2) Coe was an operating company that had been in business for 150 years, and (3) TCR invested an additional $20 million into CMC. Compl. ¶¶ 1, 6, 14. These facts do not support Fields'

PAGE 28 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

conclusory allegation that CMC was undercapitalized at the time that it began operations. Indeed, Fields' complaint appears to suggest that CMC became unable to pay Fields as a result of CMC's acquisition of the stock or assets of Coastal Machinery, Inc., in Spring 2001, a full year after CMC entered into its contracts with Fields. As the Oregon Court of Appeals observed in *Stirling-Warner*, undercapitalization is relevant only as to the initial capitalization of a corporation; subsequent transactions which affect a corporation's ability to pay its debts does not trigger alter ego liability. *Stirling-Warner*, 129 Or. App. at 341, 879 P.2d at 213. Therefore, to the extent Fields alleges that subsequent acquisitions by CMC rendered CMC unable to pay Fields, such an allegation actually undermines his claim of alter ego liability.

Fields' allegations against the Fund III Investors and the CMC Directors are, if anything, even weaker. Fields alleges that the Fund III Investors are liable for CMC's alleged breach of contract because TCR was acting as their agent. Of course, because Fields' complaint fails as a matter of law to allege alter ego liability on the part of TCR, Fields' efforts to pin TCR's supposed liability on the Fund III Investors fails as well. Similarly, Fields alleges that the CMC Directors are liable for CMC's supposed breach of contract because they "allowed TCR to intentionally strip CMC of assets." Compl. ¶ 33. However, this allegation also is premised on TCR being liable as CMC's alter ego, an allegation that fails as a matter of law. *See Outokumpu Engineering Enterprises*, 685 A.2d at 729. Therefore, the CMC directors cannot be held liable to Fields simply because they allegedly had the ability to control CMC at the time CMC allegedly breached its contract with Fields.

**B.    Count III Fails to State a Cognizable Claim for Tortious Interference with Contract**

Count III runs against TCR and its "partners", alleging that they intentionally interfered with the Guaranty and Seller Note between Fields and CMC, and the Consulting Agreement

PAGE 29 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

between Fields and Coe, by allegedly "slander[ing] Fields by making false statements to CMC and to Coe to the effect that Fields had committed acts of fraud." Compl. ¶ 48. The Complaint does not plead any specific false statements.

In order to recover on a theory of tortious interference with contractual relations, a plaintiff must prove: (1) "that the interference was intentional (*i.e.*, that it was purposeful or substantially certain to result from the conduct engaged in)"; (2) "that the interference was accomplished through improper means or with an improper motive"; and (3) "that [the interference] damaged the plaintiff." *Willamette Quarries, Inc. v. Wodtli*, 308 Or. 406, 412, 781 P.2d 1196, 1200 (1989).

This Count suffers from four fundamental flaws. <u>First</u>, the complaint recites no purportedly false statements by the Defendants. Indeed, the complaint provides no clue regarding what false statements were supposedly made; it is based solely on the generic and conclusory allegation. This is insufficient to satisfy the "improper means" element of the claim, as "[d]efendants cannot be held liable for defamation generally alleged." *Rice v. Comutek Mfg of Oregon, Inc.*, 766 F Supp. 1550, 1553 (D. Or. 1990).

<u>Second</u>, statements to CMC/Coe about Fields' fraud and misrepresentation cannot constitute a basis for this claim because CMC had sued Fields for fraud and misrepresentation. Extensive allegations of fraud were set forth in CMC's counterclaim against Fields in *Fields I.* Statements regarding Fields' fraud cannot support a claim here, as "statements that are made as part of judicial and quasi-judicial proceedings are absolutely privileged." *Wollam v. Brandt*, 154 Ore. App. 156, 961 P. 2d 219 (Or. App. 1998) (quoting *Wallulis v. Dymowski*, 323 Ore. 337, 348, 918 P.2d 755 (1996). Statements made incident to a judicial proceeding also enjoy an absolute privilege as to a defamation claim. *Id.; Moore v. Westlawn Memorial Park*, 266 Ore.

PAGE 30 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

244, 512 P.2d 1344 (1973). Any statements regarding Fields' fraud were in the course of *Fields I* or incident to that action and therefore are absolutely privileged.

Third, the alleged statements are also protected by the privilege that attaches to communications on subjects of mutual concern. "A statement is conditionally privileged if: 1) it was made to protect the interests of defendants; 2) it was made to protect the interests of plaintiff's employer; or 3) it was on a subject of mutual concern to defendants and the person to whom the statement was made." *Kofoed v. Rosendin Electric, Inc.*, 157 F. Supp. 2d 1152, 1157 (D. Or. 2001) (quoting *Wattenburg v. United Medical Lab.*, 269 Ore. 377, 380, 525 P.2d 113 (1974). This privilege applies to defamation claims and to claims for intentional interference with contract. *Id.* Fields alleges repeatedly that TCR controlled CMC. And CMC had on file a counterclaim alleging fraud by Fields. By definition, Fields' fraud was a matter of common concern. That deprives Fields' claim of any legal force.

Finally, Fields does not allege any logical causal relationship between the alleged actions of TCR and its partners and CMC's and Coe's actions with respect to Fields' contracts. Fields' tortious interference claim fails as a matter of law because there is no logical connection between the supposed conduct complained of (an alleged slander) and CMC's and Coe's actions with respect to their contractual relationships with Fields.

Indeed, Fields does not allege, nor could he, that TCR and its partners knew that any negative statements they allegedly made to CMC and Coe respecting Fields were substantially certain to cause CMC and Coe to take action with respect to their contracts with Fields. Moreover, Fields does not allege that TCR or its partners offered CMC or Coe any inducement to break contractual relations with Fields, applied any pressure on CMC or Coe, or otherwise took action to make CMC's or Coe's performance of their supposed contractual obligations

PAGE 31 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

difficult or impossible. *See Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors*, 46 Ore. App. 199, 209, 611 P.2d 658, 663 (1980) (finding it "questionable" whether simply seeking to persuade an automobile dealer not to deal with another, without evidence of an inducement not to deal, could qualify as tortious interference); *see also Top Serv Body Shop v. Allstate Ins. Co.*, 283 Ore. 201, 212, 582 P.2d 1365, 1372 (1978) (finding that alleged defamation could not support a tortious interference claim absent an purposeful plan by the defendant to harm the plaintiff's business). Because the tort of intentional interference with contractual relations requires that the defendant "purposely cause[] a third person to breach a contract with the plaintiff," the absence of an alleged (and legally cognizable) causal link between Defendants' alleged statements and CMC's and Coe's decisions regarding their contracts with Fields renders Fields' claim legally insufficient. *See Thompson v. Telephone & Data Sys., Inc.*, 130 Ore App 302, 313 881 P.2d 819, 826 n.1 (1994).

Indeed, Fields' claim of tortious interference is inconsistent with the entire factual premise underlying his complaint: that TCR controls CMC and Coe. If these allegations of control are accepted as true for purposes of this motion, no statement by TCR and its partners "induced" any action by CMC or Coe. Fields' entire case is built upon the claim that no inducement by TCR and its partners was necessary because TCR and its partners allegedly controlled CMC's and Coe's performance of their contractual relations. Thus, Fields' tortious interference claim is nothing more than an effort to recast the alter ego claims as a tortious interference claim in apparent recognition that control is not enough to allege alter ego liability.

Worse yet, Fields' allegations of control are self defeating. Officers, directors and agents of a corporation cannot be liable for tortious interference with a contract to which the corporation is a party, as long as they were acting in their corporate capacities. *See Richmark Corp. v.*

PAGE 32 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*Timber Falling Consultants, Inc.*, 1989 U.S. Dist. LEXIS 8291 (D. Or. 1989). In that action, the court quoted from the Oregon Supreme Court's decision in *Welch v Bancorp Management Advisors, Inc.*, 296 Or. 208, 675 P.2d 172 (1983):

> A corporation can only act upon the advice of officers or employees and through the actions of agents. . . . A party is usually able to abandon a disadvantageous but valid contract and be responsible for breach of contract only   The court determined that to enjoy immunity, a corporate officer or employee must be acting . . . with the intent to benefit the corporation, noting that the personal interest of the agent must be adverse to the interests of the corporation to remove the privilege.

*Id* (citations omitted).

Fields has not alleged that TCR or its "partners" had a personal interest in CMC's breach of contract with Fields that was adverse to the interests of CMC. Accordingly, this Count fails to state a claim.

### C.     Count IV Fails to State a Cognizable Claim for Tortious Breach of the Covenant of Good Faith and Fair Dealing

Count IV, like Count III, runs against TCR and it "partners." This Count alleges that they tortiously breached the covenant of good faith and fair dealing by making "defamatory and fraudulent statements" about Fields' misrepresentation of the state of Coe and the company's finances. This claim is no better than frivolous.

As a threshold matter, the alleged statements are protected by the privileges identified in the discussion of Count III. Concomitantly, the duty of good faith and fair dealings sounds in contract, rather than in tort. *See Pierce v. Int'l Ins Co of Illinois*, 671 A.2d 1361, 1366-67 (Del. 1996). Fields does not allege that any contract existed between himself and any of the Defendants named in Count IV. This is fatal, since where there is no contract, there can be no breach of an implied covenant of good faith and fair dealing. *See California Pollution Control Financing Authority v. Agajanian*, 1993 U S. App. LEXIS 8794 (9th Cir. 1993). Put another

PAGE 33 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

way, "to plead successfully a breach of an implied covenant of good faith and fair dealing, a plaintiff must allege a specific implied contractual obligation by the defendant . . ." *Gregg v Nylcare Health Plans, Inc*, 2000 U.S. Dist. LEXIS 4002, * 9 (D. Ore. 2000). Fields has not done that here, requiring dismissal.

Nor has Fields alleged the existence of a special relationship between himself and the defendants on this Count giving rise to extra contractual duties. That is required under Oregon law, and the absence of such allegations require dismissal. *See Vandersel v. Pope*, 963 P.2d 130, 134 (Ore. App. 1998).[9]

This is an unremarkable result under Oregon law. "Oregon courts have by and large resisted attempts to append tort remedies to contractual claims. Such theories as "tortious breach of contract" and "tortious breach of the covenant of good faith and fair dealing" have gained only a narrow toehold in this State, having been limited either to insurance contracts or fiduciary relationships." *Draper v. Astoria School District No. 1C*, 995 F. Supp. 1122, 1132 (D. Or. 1998); *see also Uptown Heights Associated Limited Partnership v Seafirst Corp*, 320 Or. 638, 648-50, 891 P.2d 639 (1995). This requirement, too, requires dismissal of Count IV.

**D.    Count V Fails to State a Claim for Breach of Fiduciary Duty**

Count V sets forth a claim against two groups of individual defendants. First, the purported partners of TCR are alleged to have owed a fiduciary duty to Fields in his capacity as a creditor. They purportedly breached this duty, as did the second group of individual defendants – the Directors of CMC - by: 1) causing Coe to issue preferred stock in CMC to a TCR affiliate so as to transfer essential assets for the purpose of escaping CMC's liability to

---

[9] In *Eulrich v. Snapp-on-Tools Corp*, 853 P.2d 1350 (Ore. App. 1993), the court held that if the parties construct an essentially fiduciary type dependency relationship, duties will arise from that relationship that are independent of any contractual duties that the parties might have to each other. Here, there is no allegation of the existence of any such dependency relationship.

PAGE 34 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Fields; 2) refusing to provide Fields with "documents regarding the financial condition of Coe; and 3) directing CMC to file bankruptcy prior to a hearing on Fields' motion for partial summary judgment in *Fields I*. *See* Complaint ¶ 68.

The established rule provides that the corporate law of the state of incorporation is controlling with respect to the fiduciary duty of directors as well as other internal corporate affairs. *See, e.g., H.S.W. Enterprises v. Woo Lai Oak, Inc.*, 171 F. Supp. 2d 135, 143 (S.D.N.Y. 2001) (citations omitted). Under Delaware law, at the moment a corporation becomes insolvent, the insolvency triggers fiduciary duties for directors for the benefit of creditors. *See Geyer v. Ingersol Pubs. Co.*, 621 A.2d 784, 787 (Del. Cha. 1992). This does not reach the TCR "partners." Although Delaware courts have held that directors of a corporation may owe fiduciary duties to creditors when the corporation is insolvent, no court has expressly extended that duty to controlling or majority shareholders. *See Official Committee of Unsecured Creditors v. Fleet Retail Financial Group*, 280 B.R. 90, 93 (D. Del. Bkry. 2002). His claim is also deficient with respect to the CMC directors. Here, Fields does not allege that CMC was insolvent at the time of the acts complained of or was rendered insolvent as a result of the acts complained of. Accordingly, the Court should dismiss Count V.[10]

## VI.    CONCLUSION

For these reasons, Defendants respectfully request that this Court dismiss the Complaint.

---

[10] Count VI asserts only a request for relief based upon the breaches of fiduciary duty alleged earlier in the Complaint. Accordingly, it does not state a cognizable substantive claim.

PAGE 35 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,

LANE POWELL SPEARS LUBERSKY LLP

*Leah C. Lively*

David G. Hosenpud, OSB No. 83241
Email: hosenpudd@lanepowell.com
Leah C. Lively, Leah C. Lively, OSB No. 96241
Email: livelyl@lanepowell.com
601 S.W. Second Avenue, Suite 2100
Portland, OR 97204
Telephone:    (503) 778-2100
Facsimile:    (503) 778-2200

Of Counsel:

J. William Koegel, Jr.
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Counsel for Defendants Three Cities Research, Inc.,
Three Cities Fund III, LP, TCR Friends III, LLC,
TCR Co-Investors III, LLC, TCR GP, LLC, TCR
Management, Inc., Willem F. P. De Vogel, W.
Robert Wright, Thomas G. Weld, J. William Uhrig,
Daniel Hornbarger, Darryl Dillenback and James
Wojtila*

PAGE 36 – MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS