IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRED FIELDS,                          )
                                      )
           Plaintiff,                 )
                                      )
     v.                               )
                                      )    Civ. No. 02-975-AA
THREE CITIES RESEARCH, INC., a        )
Delaware corporation or              )
partnership, THREE CITIES FUND        )
III, L.P., a Delaware limited         )
partnership, TCR FRIENDS III,         )
L.L.C., a Delaware limited            )
liability company, TCR CO-            )    OPINION AND ORDER
INVESTORS III, L.L.C., a Delaware    )
limited liability company, TCR GP,)
L.L.C., a Delaware limited            )
liability company, TCR MANAGEMENT,)
INC., a Delaware corporation,         )
COMPOSICORP HOLDINGS, LLC, a          )
Florida limited liability company,)
WILLEM F.P. DE VOGEL, an              )
individual as "partner" of Three      )
**Cities Research, Inc., W. ROBERT** )
WRIGHT, an individual as "partner")
of Three Cities Research, Inc.,       )
THOMAS G. WELD, an individual as      )
"partner" of Three Cities             )
Research, Inc., J. WILLIAM UHRIG,     )
an individual as "partner" of         )
**Three Cities Research, Inc.,**      )
RICHARD WENTWORTH, an individual )
and as member of board of             )
directors of CMC Acquisition          )
Company, Inc. and The Coe             )
Manufacturing Company, DANIEL         )
HORNBARGER, an individual and as )
member of board of directors of       )
CMC Acquisition Company, Inc. and )
The Coe Manufacturing Company,        )
DARRYL DILLENBACK, an individual      )

1    - OPINION AND ORDER

1 and as member of board of )
  directors of CMC Acquisition )
2 Company, Inc. and The Coe )
  Manufacturing Company, JAMES )
3 WOJTILA, an individual and as )
  member of board of directors of )
4 CMC Acquisition Company, Inc. and )
  The Coe Manufacturing Company, )
5                                  (
            Defendants.
6 _____)

7 **Peter C. Richter**
  Kirk W. Mylander
8 Chad E. Paulson
  Miller Nash
9 3500 U.S. Bancorp Tower
  111 S.W. Fifth Ave.
10 Portland, OR 97204
       **Attorneys for plaintiffs**

11
  David G. Hosenpud
12 Leah Lively
  Lane Powell Spears Lubersky
13 601 S.W. Second Ave., Suite 2100
  Portland, OR 97204

14
  J. William Koegel, Jr.
15 Steptoe & Johnson
  1330 Connecticut Ave., NW
16 Washington, **DC 20036**
       Attorneys for defendants Three Cities Research, Three Cities Fund
17     III, TCR Friends III, TCR Co-Investors III, TCR Management, Inc.,
       Willem F.P. **De** Vogel, W. Robert Wright, Thomas G. Weld. J. William
18     Uhrig, Daniel Hornbarger, Darryl Dillenback, and James Wojtila

19 William N. Mehlhaf
  Peter **H. Glade**
20 Markowitz, Herbold, Glade & Mehlhaf
  Suite 3000 Pacwest Center
21 1211 S.W. Fifth Ave.
  Portland, OR 97204
22     Attorneys for defendant Richard Wentworth

23 AIKEN, Judge:

24     Plaintiff Fred Fields filed suit against defendants alleging
25 breach of Guaranty and Seller **Note,** tortious interference with
26 contract, tortious breach of the covenant of good faith and fair
27 dealing, and breach of fiduciary duty. Plaintiff's claims arise from
28 the sale of plaintiff's stock in his business, The Coe Manufacturing

  2  - OPINION AND ORDER

Company (Coe), to a holding company, CMC Acquisition Company (CMC). Plaintiff alleges that at all material times, defendant Three Cities Research, Inc. controlled CMC and negotiated the Stock Purchase Agreement for CMC.

Defendants seek dismissal for lack of personal jurisdiction and for failure to state a claim. See Fed. R. Civ. P. 12(b)(2) and (6). **On March 13, 2003, the court heard oral argument on defendants' motions** and on April 9, 2003, at the court's request, defendants submitted additional information about a stock transaction involving Coe. On April 28, plaintiff responded, claiming that defendants did not provide all of the information relevant to the transaction and requesting that the court compel production of additional documents.

Upon review of the briefing, arguments, and supplemental **information** provided, **defendants' motions are granted, in part, and** plaintiff's motion to compel is denied.

### I. PARTIES

Plaintiff is an Oregon resident and former owner of Coe Manufacturing. Coe is an Ohio corporation that manufactures capital equipment and machinery for customers who manufacture gypsum, lumber, engineered lumber, composite board, and rubber composites.

Defendant Three Cities Research, Inc. (TCR) is Delaware corporation with its principal place of business in New York City. TCR **is a private equity firm that invests capital in various medium-sized** businesses operating in established industries.

**Defendant TCK Management Inc. is a Delaware corporation with its** principal place of business in New York City.

Defendant Three Cities Fund III, LP, (TCF III) is a Delaware limited partnership, with its principle place of business in New York

3 - OPINION AND ORDER

City. The general partner of TCF III is TCR Associates III, LLC, a Delaware limited liability company. The managing member of TCR Associates III is TCR GP LLC, a Delaware limited liability company.

Defendant TCR Friends III LP is a Delaware limited partnership with its principal place of business in New York City. The general partner of TCR Friends III is TCR Associates III.

TCR Co-Investors III, LLC is a Delaware limited liability company with its principal place of business in New York City.

CMC is a holding company incorporated under the laws of Delaware in October 1999. CMC was formed to acquire Coe from plaintiff. TCF III, TCR Friends III, and TCR Co-Investors III, as managed by TCR, own ninety-five percent of CMC's stock. Composicorp Holdings LLC, a Florida limited liability company, owns the remaining five percent.'

Defendant Willem de Vogel holds the title of President at TCR and TCR Management. De Vogel is a managing member of defendants TCR GP and TCR Co-Investors III, and he is also a member of TCR Associates III. De Vogel is a resident of New York.

Defendant W. Robert Wright holds the title of Managing Director at TCR and the title of President of CMC. Wright is a resident of Colorado.

Defendant Thomas Weld holds the title of Managing Director at TCR. Weld is a resident of Connecticut.

Defendant J. William Uhrig holds the titles of Secretary and Managing Director at TCR. Uhrig is a resident of New York.

Defendant Richard Wentworth is a Director of CMC and is a resident of Florida.

---

'Although Composicorp Holdings is named as a defendant, it has not been served and has not appeared in this action.

4    - OPINION AND ORDER

Defendant Daniel Hornbarger holds the title of Principal at TCR and is a Director of CMC. Hornbarger is a resident of New York.

Defendant Darryl Dillenback is President and Chief Executive Officer of Coe and is a Director of Coe and CMC.

Defendant James Wojtila is the Chief Financial Officer of Coe and an Officer of CMC. Wojtila is a resident of Ohio.

## II. BACKGROUND

In late 1999, defendant de Vogel and other representatives of TCR negotiated the possible acquisition of Coe from plaintiff. TCR entered the negotiations on behalf of TCF III, TCR Friends III, and TCR Co-Investors III (hereinafter Fund III Investors), who subsequently formed CMC to acquire Coe. See Declaration of Willem F.P. de Vogel, p. 4. As alleged in plaintiff's Complaint, plaintiff suspended the negotiations with TCR in mid-November 1999 and terminated the negotiations in January 2000. In early February 2000, the negotiations between plaintiff and the representatives of TCR resumed.

On February 8, 2000, CMC's first Board of Directors - comprised of defendant Wright, Jeanette Welsh and H. Whitney Wagner - met at TCR's New York City offices and approved the purchase of 42,500 shares of Coe common stock for $66,484,486.

On April 28, 2000, plaintiff sold his stock in Coe to CMC pursuant to a Stock Purchase Agreement dated March 8, 2000. As part of the purchase price, plaintiff agreed to accept a Subordinated Note (Seller Note) from CMC, dated April 28, 2000, under which CMC would pay plaintiff $10,000,000 plus interest over five years. The parties also negotiated a Consulting and Noncompetition Agreement between Coe and plaintiff, under which Coe would pay plaintiff $5,450,000 over three years. CMC accepted the terms of a Guaranty to secure Coe's

5   - OPINION AND ORDER

performance under the Consulting Agreement. Plaintiff alleges that the Stock Purchase Agreement, the Seller Note, the Guaranty, and the Consulting Agreement were negotiated and executed in Oregon.

On October 27, 2000, de Vogel accused plaintiff of deliberately misrepresenting and omitting material facts about Coe's financial status and fraudulently inducing CMC to purchase Coe. Affidavit of Chad Paulson, Ex. 28. CMC suspended payment to plaintiff under the purchase agreement and claimed millions of dollars in damages caused by plaintiff's fraud and misconduct.' After CMC and Coe failed to pay plaintiff under the Seller Note, Guaranty and Consulting Agreement, plaintiff accelerated the due dates under those agreements.

In July 2001, plaintiff filed suit against CMC, alleging breach

[2]De Vogel's letter provided, in pertinent part:

After buying Coe Manufacturing Company . . . from you on April 28, 2000, we have been shocked and dismayed at the state of the business we purchased. . . . Although we are working to quantify the impact of these issues, which we only recently discovered, it has become clear that even this short time that the amount of damages far exceeds anything that can be addressed in a discussion of mere indemnification under the Stock Purchase Agreement; further, limits on indemnification are inapplicable in cases of fraud or intentional misrepresentation (as reflected in Section 10.6.5 of the Stock Purchase Agreement).

***

In short, it appears that we were fraudulently induced to enter into the transaction to execute the Stock Purchase Agreement, the Subordinated Note and the Consulting and Non-Competition Agreement. Based on the fraud, material misrepresentations and fraudulent inducement that we believe infect the transaction, we are requesting either a rescission of the transaction . . . or an alternative solution . . . .

***

Pending resolution of these matters, for the reasons set forth above, we are suspending all payments on your subordinated note and under your consulting contract.

6   - OPINION AND ORDER

of the Seller Note and CMC's Guaranty of the consulting agreement. Fields v. CMC Acquisition Co., Civ. No. 01-1131-ST (D. Or. 2001). CMC counterclaimed for fraudulent inducement and breach of representation and warranties.

On July 23, 2001, de Vogel again wrote to plaintiff. De Vogel informed plaintiff that Coe's equity had no value, and consequently "CMC's **only asset is worthless and not all of its obligations can be** honored." Paulson Affidavit, Ex. 29, p. 1. **De** Vogel represented that "[a]ny investor willing to put cash into Coe will only do so directly, and not through CMC. Thus CMC's interest in Coe has the potential to be diluted in such a recapitalization." Id. **De** Vogel then made a settlement offer to resolve plaintiff's claims against CMC.

In a memorandum to de Vogel dated February 15, 2000, Coe's chief financial **officer, defendant Wojtila,** described Coe's financial difficulties and requested an "immediate capital infusion of $3 million" from TCR. Defendants' Memorandum Regarding Coe Manufacturing Company's Capital Infusion, Ex. 3. In explaining the need for capital, Wojtila stated, "We have made strong improvements in customer relations over the past two years since TCR has acquired the Company. We are excited about the many opportunities before us for 2002 and cannot afford an impediment of this nature." Id.

On February 22, 2002, Coe adopted resolutions and amendments to **its Articles of Incorporation which authorized the issuance and sale** of 30,000 shares of convertible preferred stock to Coe Funding, Inc. for $3,000,000. Coe Funding, Inc. was formed to purchase the newly-issued Coe stock and raised the $3,000,000 by selling shares of its stock to TCF III, one of the Fund III Investors which owns a controlling interest in CMC. CMC approved the amendment and resolution

7   - OPINION AND ORDER

to Coe's Articles of Incorporation which authorized the issuance of the preferred stock. Paulson Affidavit, Ex. 30, p.2.[3]

After this transaction, CMC held 100 percent of Coe's common stock and Coe Funding held 30,000 of Coe's convertible preferred stock, which constitutes ninety-seven percent of Coe's equity upon conversion. Thus, CMC's ownership of Coe was diluted from 100 percent to approximately three percent.

On February 28, 2002, defendant TCF III sent its investors an update on its portfolio and activities, which included the following description of activities involving Coe:

> Coe Manufacturing (capital equipment for wood products) is resoonsible for $18.5 million of unrealized loss. As most of you will remember, the company had problems with seller misrepresentations in addition to which, the wood products and building products manufacturers cut back drastically on their capital expenditures. All of this resulted in downsizing, all of which is old news for you. What is new is that while the company is optimistic that 2002 will see a modest upturn in orders, and in fact January saw some of this actually happening, unfortunately cash became too tight. Thus we did a $3 million cash increase into Coe. The increase was done in a way to moot the dispute with the seller; we hope that logic will prevail and result in a settlement.

Paulson Affidavit, Ex. 31.

On or about July 13, 2002, CMC filed a Chapter 7 bankruptcy petition in the District of Delaware, and plaintiff's suit against CMC was stayed. CMC's bankruptcy proceeding was subsequently transferred to the District of Ohio where it remains pending.

On July 22, 2002, plaintiff filed this action. Plaintiff asserts claims against TCR and its individual "partners," the Fund III Investors, and the directors and shareholders of CMC.

---

[3]On the facsimile coversheet to his signature page approving the sale, defendant Richard Wentworth wrote, "R uss & Mark, We should be sure to get our shares of the new entity." Paulson Affidavit, Ex. 30, p. 1.

8   - OPINION AND ORDER

Plaintiff alleges breach of the Guaranty and Seller Note, tortious breach of the covenant of good faith and fair dealing, and tortious inference with a contract against TCR and its partners. Plaintiff alleges that TCR caused CMC to breach the agreements with plaintiff by: 1) failing to make the first annual payment and subsequent payments pursuant to the Seller Note; 2) failing to make payments due under the Consulting Agreement Guaranty; and 3) causing CMC to dilute its ownership in Coe through the issuance of Coe preferred stock. Plaintiff alleges that TCR may be held liable for CMC's alleged contractual breaches under the theory of alter ego liability. Plaintiff argues that TCR exercised control over CMC, inadequately capitalized CMC for payment of the Consulting Agreement Guaranty as it became due, and deliberately manipulated CMC's ownership in Coe to prevent plaintiff from collecting judgment against CMC. Plaintiff alleges that individual defendants de Vogel, Wright, Weld, and Uhrig are liable for CMC's breach as "partners" of TCK.

Plaintiff alleges claims for breach of the Seller Note and Guaranty against the Fund III Investors. Plaintiff maintains that the Fund III investors may be held liable for CMC's alleged breaches, because TCR was acting as their agent when TCR exercised control over CMC and engaged in the allegedly improper conduct.

Finally, plaintiff alleges claims for breach of the Seller Note and Guaranty and breach of fiduciary duty to a creditor against individual defendants Wentworth, Hornbarger, Dillenback, and Wojtila. Plaintiff alleges that these defendants, as Directors of CMC, had a fiduciary duty to plaintiff as a creditor, and they allowed TCR to "strip" CMC of assets that would otherwise have been available to meet CMC's obligations to plaintiff.

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(2), claiming that the court lacks personal jurisdiction over them. Alternatively, defendants move for dismissal under Federal Rule Civil Procedure 12(b)(7) for failure to join CMC as an indispensable party. Finally, defendants move for dismissal under Federal Rule Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

### III.   JURISDICTIONAL   STANDARDS

Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether the forum state's long-arm statute permits the assertion of jurisdiction and whether assertion of personal jurisdiction violates federal due process. <u>Fireman's Fund Ins. co. v. National Bank of Cooperatives,</u> 103 F.3d 888, 893 (9th Cir. 1996); <u>Chan **v. Society Expeditions, Inc.,** 39</u> F.3d **1398, 1404-05 (9th** Cir. 1994).   Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process. Or. R. Civ. P. 4L.   Thus, the analysis collapses into a single framework and the court proceeds under federal due process standards.

Due process requires that a defendant, if not present in the state, "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial just i**ce.**" <u>International Shoe Co. v. Washington,</u> 326 U.S. 310, 316 (1945) (internal citation and quotation marks omitted). Minimum contacts can be demonstrated through facts supporting either general or specific jurisdiction over the defendant.   See <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 & n.8 (1984).

General jurisdiction refers to the authority of a court to hear any cause of action involving a defendant, regardless of whether the

10   - OPINION AND ORDER

cause of action arose from the defendant's activities within the forum state. Helicopteros, 466 U.S. at 414 & n.9, 415. In order for a court to assert general jurisdiction, the defendant must have "continuous and systematic" contacts with the forum state. Id. at 416. Factors relevant to this analysis include whether the defendant "makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a state license, or is incorporated there." Bancroft & Masters, Inc. v. Aususta National, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

If general jurisdiction is not established, a court may exercise specific jurisdiction if the cause of action arises directly from a defendant's contacts with the forum state. See Sher v. Johnson, 911 F.2d 1357, 1361 (1990). The Ninth Circuit employs a three-part test to determine whether the exercise of specific jurisdiction comports with due process. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).

First, the defendant must perform some act or consummate some transaction by which it "purposefully avails" itself of the privilege of conducting activities in the forum, thereby invoking the benefits of the forum and having "fair warning" that a particular activity may subject it to jurisdiction. Id.; see also Buraer King v. Rudzewicz, 471 U.S. 462, 472 (1985). Second, the claim must be one which arises out of or results from the defendant's forum-related activities. Ballard, 65 F.3d at 1500. Third, the court's exercise of jurisdiction must be reasonable. Id.

Plaintiff bears the burden of establishing personal jurisdiction through a prima facie showing of jurisdictional facts. American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586,

11 - OPINION AND ORDER

588 (9th Cir. 1996); <u>Farmers Ins. Exchange v. Portage La Prairie Mut.</u>
<u>Ins. Co.</u>, 907 F.2d 911, 912 (9th Cir. 1990). To meet this burden,
plaintiff "need only demonstrate facts that if true would support
jurisdiction over the defendant." <u>Harris Rutsky & Co. Insurance</u>
<u>Services, Inc. v. Bell & Clements Limited,</u> 328 F.2d 1122, 1129 (9th
Cir. 2003) (internal quotation marks and citation omitted). Unless
directly contradicted, the allegations of the complaint are accepted
as true and disputed facts must be resolved in plaintiff's favor. <u>Id.</u>
(quoting <u>Doe, I v. Unocal Corp.</u>, 248 F.3d 915, 922 (9th Cir. 2001) (per
curiam)); <u>see also Ziegler v. Indian River County,</u> 64 F.3d 470, 474
(9th Cir. 1995).

## IV.   ANALYSIS

Defendants argue that this court cannot entertain jurisdiction
over them because they lack the requisite "minimum contacts" with this
forum. Plaintiff counters that TCR, the Fund III Investors, and
individual defendants have sufficient contacts with Oregon by virtue
of TCR's negotiations with plaintiff to acquire Coe, and by attributing
CMC's contacts with Oregon to TCR under the theory of alter ego
liability.

A.   General   Jurisdiction

1.   TCR and Fund III Investors

TCR and the Fund III Investors emphasize that all were formed
under the laws of Delaware **and maintain principal places of business**
in New York City. None is incorporated in Oregon and none has a
principal place of business or a physical presence in Oregon. TCR and
the Fund III Investors have no offices, showrooms, warehouses, real
property, or telephone listings in Oregon. They have not designated
registered agents for service and have no regular business contacts in

12   - OPINION AND ORDER

Oregon. TCR and the Fund III Investors do not conduct sales or engage in business in Oregon, and they do not advertise business in Oregon periodicals. Some employees or agents of the TCR entities have traveled to Oregon infrequently for business trips.

Despite the lack of "continual and systematic" contacts with Oregon, plaintiff claims that general jurisdiction may be had through TCR's **and the Fund III Investor's business relationships with Oregon** companies. Plaintiff emphasizes that TCR has invested in four "portfolio" companies - Factory 2-U Stores, Inc. Noah's Bagel Corp., Masterplan Inc., and Finn Corp. - that own or operate retail businesses or conduct sales activity in Oregon.

However, plaintiff offers no legal authority for the rather novel proposition that investing in or contracting with a third party who has **contacts in the forum state provides sufficient contacts for general** jurisdiction. See Bancroft & Masters, 223 F.3d at 1086 ("[E]ngaging in commerce **with** residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."); Gates Leariet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984) (several visits and purchases in forum, solicitation of a contract in the forum including choice of law provision favoring forum, and communication within forum were not "continual and systematic" or "substantial"); Jemez Agency, Inc. v. Cigna Corp., 866 F. Supp. 1340, 1348 **(D.N.M. 1994)** ("[D]ue **process** renders constitutionally infirm any attempt to hold a shareholder, whether an individual or a corporation, subject to the personal jurisdiction of an out-of-state forum by the mere fact that the corporation in which that shareholder has invested does business there."). Therefore, I find that plaintiff fails to establish general jurisdiction over TCR

13 - OPINION AND ORDER

or the Fund III Investors.

## 2. Individual Defendants

With respect to the individual defendants, none is a resident of Oregon. None maintains residences or bank accounts or regularly conducts business in Oregon. With one exception, none of the individual defendants has family, property, telephones, or licenses in Oregon. All defendants have offices outside Oregon, and all were served outside Oregon.

De Vogel has taken fewer than ten trips to Oregon, each relating generally to CMC's acquisition of Coe. Wright has traveled to Oregon four times on business and once on vacation, with each trip lasting less than four days. Weld has taken fourteen business trips to Oregon related to the acquisition of Coe, each lasting no more than two days. Weld has taken one personal vacation to Oregon. Uhrig has taken two business trips to Oregon related to Coe, for a total of no more than four days. Hornbarger has taken six trips to Oregon for no more than three days at a time, all generally related to the Coe acquisition.

Dillenback and Wojtila are officers of Coe and have visited Coe's Oregon facility on several occasions. Dillenback has taken less than twenty trips to Oregon for business purposes related to Coe. Wojtila has taken seven trips to Oregon, all since 2001 and all related to Coe.

Based on the infrequent and sporadic contacts these individuals have with Oregon, I find general personal jurisdiction lacking over these individual defendants.

Wentworth was a resident of Oregon from 1960 to 1964 and from 1978 to 1979. Wentworth owns one building lot in Oregon, but maintains no residence, office, bank account, or telephone listing in Oregon. Wentworth has no Oregon license and has not paid Oregon state income

14 - OPINION AND ORDER

taxes since 1979. Since 1979, Wentworth has made two or three business trips a year to Oregon, with the vast majority being business trips. Approximately five of those trips were related to CMC or Coe.

Although ownership of property in Oregon and frequent business trips could potentially support the exercise of general jurisdiction over Wentworth, "the mere presence of property in a State does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action." Rush v. Savchuck, 444 U.S. 320, 328 (1980) (citing Shaffer v. Heitner, 433 U.S. 186, 209 (1977)). Plaintiff provides no additional evidence relevant to Wentworth's property ownership or business dealings in Oregon to support general jurisdiction over him.

B. Specific Jurisdiction

Defendants argue that specific jurisdiction is lacking, because defendants did not purposefully avail themselves of the benefits of Oregon, and plaintiff's claims for relief do not arise out of defendants' contacts with Oregon. Plaintiff contends that the court may exercise specific jurisdiction over all defendants, because TCR directed its activities at plaintiff in Oregon, and plaintiff's claims arise from TCR's conduct in and directed at Oregon.

1. TCR and Fund III Investors

Plaintiffs must first set forth facts establishing purposeful availment on the part of TCR and the Fund III Investors. Purposeful availment is shown "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." Ballard, 65 F.3d at 1498. Although contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create a "substantial connection" with the forum, the contacts must be

15 - OPINION AND ORDER

more than random, fortuitous, or attenuated. <u>Burser King</u>, 471 U.S. at 472-73, 475.

Plaintiff argues that TCR and the Fund III Investors purposefully availed themselves of this forum by entering into negotiations with plaintiff regarding the acquisition of Coe. Representatives of TCR, including de Vogel and Weld, traveled to Oregon to negotiate the sale of Coe and witness the closing of the Stock Purchase Agreement. Plaintiff also relies on several trips to Oregon taken afterward by de Vogel, Weld and Uhrig regarding Coe business. Plaintiff further argues that TCR and the Fund III Investors directed their activities at Oregon through TCR's dilution of CMC's stock in order to deprive plaintiff of a remedy against CMC.

Purposeful availment may be established "if the defendant 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."' <u>Harris Rutsky & Co. Insurance Services</u>, 328 F.2d at 1130 (quoting <u>Sher</u>, 911 F.2d at 1362). Here, TCR — through its officers and directors — conducted contract negotiations in Oregon with plaintiff, an Oregon resident. Further, as alleged by plaintiff, TCR's contacts in Oregon may be attributed to the Fund III Investors. Plaintiff asserts that TCR is the agent of the Fund III Investors, and defendants acknowledge that TCR "manages" the Funds III Investors and acted on their behalf in negotiating the purchase of Coe. <u>See Chan</u>, 39 F.3d at 1405 (to establish minimum contacts through an agent, plaintiff must make a prima facie showing that agent was acting on behalf of principal in connection with forum state).

However, a contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal

16 - OPINION AND ORDER

jurisdiction, particularly when, as here, TCR was not a party to the contract. Burser King, 471 U.S. at 478. Instead, the court must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether TCR purposefully established minimum contacts. Id. at 479. While it is true that TCR, through its officers and directors, conducted contract negotiations with plaintiff over several months, this conduct does not suffice to show "deliberate" and "substantial" contacts with the forum. TCR is not a party to the contract; therefore, it created no continuing obligations with a forum entity and derives no benefits from the Oregon choice-of-law provision in the Stock Purchase Agreement. Id. at 476, 481. Plaintiff thus fails to show purposeful availment based on TCR's negotiations conducted in Oregon.

Nevertheless, plaintiff maintains that CMC's contacts with this forum may be imputed to TCR as its alter ego, because TCR exercised control over CMC in order to deprive plaintiff of a remedy against CMC. Plaintiff insists that this court may exercise specific jurisdiction over defendant, "[b]ecause TCR diluted CMC's ownership of Coe for the express purpose of moot[ing] the dispute" with plaintiff. Plaintiff's Response to Defendants' Memorandum Regarding Coe Manufacturing Company's Capital Infusion, p. 6.

A court may exercise personal jurisdiction over a parent corporation when its subsidiary is subject to the court's jurisdiction and the subsidiary acts as the parent's "alter ego" so as to justify disregard of the corporate form. Rice v. Oriental Fireworks Co., 75 Or. App. 627, 632, 707 P.2d 1250, 1255 (1985) ("[A] corporation's identity may be disregarded for purposes of maintaining jurisdiction

17   - OPINION AND ORDER

over controlling shareholders."). "The principle is simple enough: '[I]f the corporation is [the shareholder's] alter ego, its contacts are [the shareholder's] and due process is satisfied."' <u>Id.</u> (quoting <u>Lakota Girl Scouts C., Inc. v. Havev Fund-Raising Management, Inc.,</u> 519 F.2d 634, 637 (8th Cir. 1975)).

Three criteria must be met to impose liability under the alter ego theory: "(1) the shareholder must have controlled the corporation; (2) the shareholder must have engaged in improper conduct in his exercise of control over the corporation; and (3) the shareholder's improper conduct must have caused the plaintiff's inability to obtain an adequate remedy from the corporation." <u>Rice,</u> 75 Or. App. at 632, 707 P.2d at 1255 (citing <u>Amfac Foods v. Int'l. Svstems,</u> 294 Or. 94, 108, 654 P.2d 1092, 1101 (1982)).[4] "[T]he party seeking to establish personal jurisdiction need only make a prima facie showing, through affidavits and supporting materials, of the facts necessary to meet

---

[4]In the Ninth Circuit, the law of the forum state applies in determining whether a corporation is an alter ego of another. <u>Towe Antique Ford Found. v. IRS,</u> 999 F.2d 1387, 1391 (9th Cir. 1993). TCR maintains that Delaware law governs the issue alter ego liability, because both TCR and CMC were incorporated in Delaware. Oregon's choice of law rules do not address whether the law of the incorporating state or the law of the forum state governs the issue of alter ego liability.

However, I find the applicable standards of alter ego liability in Delaware to be similar, if not the same, as Oregon law. <u>See Outokumpu Ensineering Enterprises, Inc. v. Kvaerner Enviropower, Inc.,</u> 685 A.2d 724, 729 (Del. Super. 1996) ("Because it is analogous to veil piercing, the alter ego theory requires that the corporate structure cause fraud or similar injustice. Mere dominion and control of the parent over the subsidiary will not support alter ego liability. The 'injustice' must be more than the breach of contract alleged in the complaint, or even the burden of bringing the action in another forum.") (citations omitted); <u>Skouras v. Admiraltv Enterprises, Inc.,</u> 386 A.2d 674, 681 (Del. Ch. 1978) ("Mere control and even total ownership of one corporation by another is not sufficient to warrant the disregard of a separate corporate entity. Absent a showing of a fraud or that a subsidiary is in fact the mere alter ego of the parent, a common central management alone is not a proper basis for disregarding separate corporate existence.") (citations omitted).

18 - OPINION AND ORDER

those criteria." <u>Rice,</u> 75 Or. App. at 632, 707 P.2d at 1255.

Plaintiff argues that he has established a prima facie case of alter ego liability because: 1) TCR controlled CMC; 2) TCR caused CMC to dilute CMC's stock ownership in Coe through the issuance of Coe preferred stock; and 3) TCR took such action to deprive plaintiff of a remedy against CMC for breach of the Seller Note and Guaranty.

**Plaintiff's contention that CMC is the alter ego of TCR cannot** succeed for the simple fact that TCR is neither a shareholder nor the parent corporation of CMC. Generally, the theory of alter ego liability is premised on ownership of the corporation; it provides a means by which shareholders of a corporation may be held liable for the actions of the corporation. See <u>Amfac Foods</u>, 294 Or. at 105, 654 P.2d at 1099 ("This court has stated the rule that under some circumstances **corporate shareholders who control and dominate a corporation may be** held personally liable if the corporation is a mere 'instrumentality' or **'alter ego' and where fraud or injustice has resulted."). As** alleged in the complaint and conceded by plaintiff, the Fund III Investors own ninety-five percent of CMC stock and Composicorp Holdings owns the remaining five percent. While the facts presented suggest that TCR through de Vogel made decisions and communicated with plaintiff on CMC's behalf, plaintiff fails to explain how TCR "controls" CMC in the absence of a controlling ownership interest.

**Curiously, plaintiff advances his theory of alter ego liability** without addressing the question of whether the court may impose liability on an entity which is not the owner, parent, or shareholder of a corporation. TCR's lack of ownership interest would require reliance on a variation of the alter ego theory premised on "equitable ownership" as recognized by several jurisdictions:

19 - OPINION AND ORDER

> [W]hen there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or . . . when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting, . . . a court "need not consider with nicety which of them" ought to be held liable for the act of one corporation "for which the plaintiff deserves payment."

My Bread Baking Co. v. Cumberland Farms, Inc., 233 N.E.2d 748, 752 (Mass. 1968) (citation omitted); see Freeman v. Complex Computing, 119 F.3d 1044, 1051 (2d Cir. 1997) ("New York courts have recognized for veil-piercing purposes the doctrine of equitable ownership, under which an individual who exercises sufficient control over the corporation may be deemed an 'equitable owner,' notwithstanding the fact that the individual is not a shareholder of the corporation."); Oman Int'l Finance Ltd. v. Hoivong Gems Corp., 616 F. Supp. 351, 363 (D. R.I. 1985) (the separateness of corporate entities "will be respected unless the totality of circumstances surrounding their relationship indicates that one of corporations 'is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of [the other]/") (quoting Vucci v. Meyers Bros. Parking System, Inc., 494 A.2d 530, 536 (R.I. 1985)).

However, plaintiff does not argue or present evidence that TCR dominates CMC – through voting or dispository powers, for example – to such an extent that it may be deemed the equitable owner of CMC. Further, it is questionable whether this theory is or would be recognized by Oregon courts. See Rice, 75 Or. App. at 632, 707 P.2d at 1255 (explaining criteria to assert "shareholder" liability under alter ego theory); cf., Securities and Exchange Comm'n v. Hickey, 322

20  - OPINION AND ORDER

F.3d 1123, 1128-29 (Under California law, "[o]wnership is a prerequisite to alter ego liability, and not a mere factor or guideline.").

The additional information provided by defendants regarding Coe's capital infusion raises more questions than it answers and is of no avail to plaintiff. Those documents reveal that TCF III, which owns a controlling interest in CMC, purchased shares of Coe Funding for $3,000,000. In turn, Coe Funding purchased Coe's newly-issued convertible preferred stock for $3,000,000 to provide Coe with needed capital. CMC approved the issuance of Coe stock with the apparent knowledge that its ownership interest in Coe would be significantly diluted. To be sure, these transactions raise the specter of improper conduct in the exercise of control over CMC to deprive plaintiff from obtaining a remedy. However, they do not establish prima facie evidence of an alter ego relationship between TCR and CMC.

Even if the alleged facts support an inference that TCR managed the Fund III Investors and "controlled" CMC on their behalf, plaintiff fails to explain how the relationship between TCR and the Fund III Investors provides a basis to impute CMC's Oregon contacts to TCR. Plaintiff does not allege or offer facts to show that TCR has a controlling interest in TCF III or the other Fund III Investors; rather, plaintiff asserts that TCR acts as their agent. Likewise, plaintiff does not allege that the CMC is the alter ego of the Fund III Investors, or that the Fund III Investors exerted improper control over CMC - through TCR - to deprive plaintiff of a remedy.[5] Indeed, the

_____

[5] "In one section of his response to defendants' motions, plaintiff states that "defendants" control CMC and diluted CMC's stock ownership in Coe. Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, p. 13. However, as alleged in plaintiff's Complaint and argued

21 - OPINION AND ORDER

holding and management structure of TCR, the Fund III Investors, and their various affiliates poses factual complexities that neither party endeavors to elucidate. Ultimately, however, it the plaintiff's burden to present a prima facie showing of jurisdictional facts.

It is undisputed that neither TCR nor the Fund III Investors were parties to the contract between plaintiff and CMC. It is undisputed that the Fund **III Investors, not TCR, own a controlling interest in CMC.** It is also undisputed that TCF III, not TCR, formed Coe Funding to purchase the shares of Coe, and that CMC - owned by the Fund III Investors - approved the sale of Coe preferred stock to Coe Funding. Clearly, TCR played a role in facilitating the contract between CMC and plaintiff and the transactions between TCF III, Coe Funding and Coe. Nevertheless, absent evidence that TCR possesses an ownership interest in CMC or that TCR controls **CMC to the extent that it may be deemed** CMC's equitable owner, I cannot find that CMC is a mere "instrumentality" or alter ego of TCR. Accordingly, plaintiff cannot establish purposeful availment by TCR or the Fund III Investors by virtue of CMC's contacts with plaintiff and this forum.

However, I find that plaintiff asserts purposeful availment based on TCR's allegedly tortious conduct directed at plaintiff for the purpose of interfering with plaintiff's agreement with CMC. Under the so-called "effects test," jurisdiction may be properly asserted over **a defendant who intentionally** directs **conduct toward the forum state,** knowing the effects of the conduct will cause harm. <u>Calder v. Jones,</u> 465 U.S. 783, 789-90 (1984); <u>Panavision Int'l L.P. v. Toeppen</u>, 141 F.3d

throughout plaintiff's responsive memorandum, plaintiff asserts that CMC was the alter ego of only TCR and that only TCR controlled CMC. Therefore, I do not construe this statement to allege alter ego **liability against the Fund III Investors.**

22 - OPINION AND ORDER

1316, 1321 (9th Cir. 1998). Plaintiff alleges that TCR slandered plaintiff through its accusations that plaintiff made fraudulent misrepresentations as to the Coe's worth. Plaintiff further alleges that TCR's tortious actions caused CMC to repudiate and suspend payment under the Seller Note and Guaranty. Taken as true, plaintiff's allegations establish intentional conduct by TCR essentially aimed at plaintiff in Oregon. Thus, I find that TCR's alleged actions suffice to establish purposeful availment.

To meet the second prong of specific jurisdiction, plaintiff must establish that TCR's forum activities gave rise to plaintiff's claims. In other words, plaintiff must show that but for TCR's tortious conduct directed at Oregon, plaintiff's claims against defendants would not have risen. Ballard, 65 F.3d at 1500. Plaintiff claims that TCR's conduct in Oregon gives rise to his claims for rclicf, because his claims relate to the Stock Purchase Agreement negotiated by TCR. Plaintiff asserts that "[b]ut for TCR's actions, [plaintiff] would not have entered into an agreement with CMC, that TCR caused to be breached, and would have been able to obtain judgment and to collect his judgment by foreclosing on CMC's assets - 100% of the stock of Coe. " Plaintiff's Response to Defendants' Motion to Dismiss, p. .

Plaintiff's claims for breaches of the Seller Note and Guaranty, breach of the duty of good faith and fair dealing alleged against TCR do not arise from TCR's tortious conduct directed at plaintiff. Rather, only plaintiff's claim of tortious interference with a contract arose from TCR's allegedly slanderous statements. This claim does not rely an alter ego theory of liability, and I find that plaintiff sufficiently alleges that but for TCR's allegedly slanderous comments directed at plaintiff in Oregon, plaintiff's claim for tortious

23     OPINION AND ORDER

inference would not have arisen.  However, plaintiff fails to show that his claims for breach of the Seller Note and Guaranty and tortious breach of the covenant of good faith and fair dealing arise from TCR's contacts with Oregon.

Having found that plaintiff satisfies the first two prongs of specific jurisdiction regarding his claim of tortious inference, the burden now shifts to TCR to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  Panavision Int'l, 141 F.3d at 1322 (quotation marks and citation omitted).  Factors relevant in determining reasonableness include:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state;  (4) the forum state's interest in adjudicating the dispute;  (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; (7) the existence of an alternative forum.

Id. at 1323.

I find that the first and third factors do not weigh heavily in favor of either plaintiff or defendant.  TCR sought out a business relationship with plaintiff on behalf of the Fund III Investors; however, these limited contacts do not represent purposeful interjection into Oregon to a great extent.  Further, given the fact that TCR's conduct occurred in New York and was allegedly directed at plaintiff for the purpose of interfering with an Oregon contract, I discern no conflict with the sovereignty of Delaware.

The second, fifth and seventh factors favor dismissal.  None of the corporations involved are Oregon corporations.  Coe is an Ohio corporation,  and CMC and TCR are Delaware corporations.  No party other

24  - OPINION AND ORDER

than plaintiff resides in Oregon and the majority of witnesses and documents relevant to this action reside or are located outside Oregon. Therefore, TCR will carry a greater burden defending this action in Oregon. For these reasons, I cannot find that Oregon is the most efficient forum for this litigation. Finally, an alternative forum for plaintiff exists.

**Nevertheless, the fourth and sixth factors weigh in favor of** asserting jurisdiction. This forum possesses an interest in adjudicating a dispute involving an Oregon resident and most likely governed by Oregon law. Further, as a resident of this forum, it is important that plaintiff have convenient and effective relief. Therefore, I find that TCR fails to show that assertion of personal jurisdiction with respect to plaintiff's claim of tortious interference is unreasonable.

## 2. Individual Defendants

Plaintiff argues that specific jurisdiction over the **individual** defendants is established through their contacts with Oregon in negotiating the Stock Purchase Agreement and through their subsequent travel to Oregon on Coe business.

Plaintiff presents insufficient evidence to show that the individual defendants purposefully availed themselves, as individuals, of the privileges of conducting business in Oregon. Granted, the **individual defendants traveled to Oregon to negotiate the acquisition of Coe,** to attend Board meetings of Coe, and to view the Coe facility in Oregon. See Declarations of de Vogel, **Dillenback,** Hornbarger, Uhrig, Weld, Wentworth, Wojtila, and Wright. However, each individual was acting in his capacity as an officer or director of TCR, CMC, or Coe. "[A] corporate officer who has contact with a forum only with

25 - **OPINION AND ORDER**

regard to the performance of his official duties is not subject to personal jurisdiction in that forum." <u>Kransco Mfg., Inc. v. Markwitz,</u> 656 F.2d 1376, 1379 (9th Cir. 1981) (quoting <u>Forsythe v. Overmyer</u>, 576 F.2d 779, 783-84 (9th Cir. 1978)). Plaintiff does not allege that any individual defendant acted on his own behalf or that any individual defendant disabused the corporate form for his personal gain.

Alternatively, plaintiff attempts to attribute TCR's Oregon contacts to individual defendants de Vogel, Wright, Uhrig, and Weld under principles of partnership. Plaintiff asserts that TCR represents that it is a partnership, with these individual defendants identified as "partners." Plaintiff relies on a brochure explaining that TCR is "managed by a partnership," and that it "currently has five full equity partners." Paulson Affidavit, Ex. 1, pp. 1, 16. TCR identified "Investment Team" includes "Partners" Uhrig, de Vogel, Weld, and Wright. <u>Id.</u> at p. 14. TCR responds that, as alleged in plaintiff's Complaint, TCR is a corporation and therefore principles of partnership do not apply. I agree. Although TCR may refer to certain persons as "partners" in its promotional brochures, plaintiff presents no evidence that TCR is a partnership.[6]

C. <u>Failure to State a Claim</u>

Plaintiff allege that TCR intentionally interfered with the contract between plaintiff and CMC, in that TCR made slanderous misrepresentations about plaintiff which **caused CMC to withhold**

---

[6]Even if plaintiff presented evidence that TCR was a partnership, "[l]iability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each defendant's relationship with the forum." <u>Sher</u>, 911 F.2d at 1365. Thus, "[r]egardless of their joint liability, jurisdiction over each defendant must be established individually." <u>Id.</u>

26 - OPINION AND ORDER

payments due under the Purchase Agreement. TCR argues that plaintiff fails to state a claim under which relief may be granted, because plaintiff fails to identify false statements uttered by TCR or that its statements caused CMC to withhold payments under the Seller Note and Guaranty.

Under Oregon law, a party may recover damages for wrongful interference with a contract. Wampler v. Palmerton, 250 Or. 65, 439 P.2d 601 (1968). The interest protected by the tort is "the interest of the individual in the security and integrity of the contractual relations into which he has entered." Id. at 73, 439 P.2d at 605. To state a claim for intentional interference with a contract, plaintiff must allege the following elements:

> (1) the existence of a professional or business relationship (which could include, e.g., a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.

McGanty v. Staudenraus, 321 Or. 532, 535, 901 P.2d 841, 844 (1995). Here, plaintiff alleges that TCR intentionally interfered with plaintiff's agreement with CMC. Plaintiff claims that TCR made slanderous comments that plaintiff materially misrepresented Coe's financial status and fraudulently induced CMC to enter into the Stock Purchase Agreement, and that CMC repudiated the contract and suspended payment to plaintiff as a result. Thus, I find that plaintiff sufficiently states a claim for tortious interference.

TCR counters that the allegedly slanderous statements were made in support of CMC's counterclaims of fraud and misrepresentation and are therefore privileged. However, as evidenced by de Vogel's letter of October 27, 2000, these statements were made prior to plaintiff's

27 - OPINION AND ORDER

lawsuit against CMC; in fact, plaintiff alleges that these statements led to CMC's breach of Guaranty and the Seller Note.

Defendants also argue that the alleged statements are protected as communications of mutual concern. An alleged defamatory statement is subject to a qualified or conditional privilege if it pertained to a subject of mutual concern to the defendant and the person to whom the statement was made. **Wattenburg v. United Medical Lab, 269 Or.** 377, 380, 525 P.2d 113, 114 (1974). However,

> [T]he privilege may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; if it is published for a purpose other than that for which the particular privilege is given; if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose.

Lund v. Arbonne International, Inc., 132 Or. App. 87, 96, 887 P.2d 817, 824 (1994).

Here, TCR claims that any statements made were of mutual concern to TCR and CMC, because plaintiff alleges that TCR controlled CMC. However, **TCR fails to provide factual support for the assertion** that such statements were of mutual concern, particularly in light of the **fact that TCR possesses no ownership interest in CMC. Moreover, as** plaintiff points out, whether TCR's statements are conditionally privileged involves questions of fact which cannot be resolved on a motion to dismiss. Therefore, TCR's motion to dismiss for failure to state a claim for tortious interference is denied.

///
///
///
///

28  - OPINION AND ORDER

CONCLUSION

With the exception of his claim for tortious interference with a contract alleged against TCR, plaintiff fails to set forth jurisdictional facts to support the exercise of personal jurisdiction over defendants. Accordingly, defendants' Motions to Dismiss for Lack of Personal Jurisdiction (docs. 19 and 21) are GRANTED, in part. Plaintiff's following claims are HEREBY DISMISSED:

1. Plaintiff's First and Second Claims for Relief asserted against Three Cities Research, Inc., Three Cities Fund III, LP, TCR Friends III, LP, and TCR Co-Investors, LLC, TCR GP, LLC, TCR Management, Inc., and all individual defendants;

2. Plaintiff's Third Claim for Relief asserted against individual defendants Willem F.P. de Vogel, W. Robert Wright, Thomas G. Weld, and J. William Uhrig;

3. Plaintiff's Fourth Claim for Relief asserted against Three Cities Research, Inc. and individual defendants Willem F.P. de Vogel, W. Robert Wright, Thomas G. Weld, and J. William Uhrig; and

4. Plaintiff's Fifth Claim for Relief asserted against all individual defendants.

Plaintiff's Motion to Compel Production of Documents (doc. 50) is DENIED as moot.

IT IS SO ORDERED.

Dated this ___ day of July, 2003.

_____
Ann Aiken
United States District Judge

29   OPINION AND ORDER